IN the MATTER OF the CIVIL CONTEMPT OF Donald KROLL:

BARTELL V. BARTELL;

Donald KROLL, Appellant,

v.

Susan Lynch BARTELL, Respondent.

Court of Appeals

*No. 80–064. Argued January 15, 1981.—Decided February 24, 1981.*
(Also reported in 304 N.W.2d 175.)

For the appellant the cause was submitted on the brief of *Stephen M. Glynn* and *Waring R. Fincke* of *Shellow & Shellow* of Milwaukee. Oral argument by *Stephen M. Glynn*.

For the respondent the cause was submitted on the brief of *D. Michael Guerin* of *Gimbel, Gimbel and Reilly* of Milwaukee. Oral argument by *D. Michael Guerin*.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. This is an appeal from an order holding Donald Kroll in civil contempt. Because Kroll timely filed a request for substitution of judge pursuant to sec. 801.58(1), Stats., the trial judge had no jurisdiction to hear the contempt proceeding, except to determine if the request was correct as to form and timely filed. We therefore vacate the order and remand the case with directions.

Initially, the trial judge was hearing a divorce matter involving Susan and Armand Bartell. Armand was not at the divorce hearing. He had vanished the year before taking with him the couple's three children, contrary to an order of the court. Armand had $10,018.15 due him from the Wisconsin Retirement Fund which he either was unable to take or did not take with him. Susan alleged that Donald Kroll, Armand's brother-in-law, had at least a substantial portion of the money in one of his bank accounts in safekeeping for Armand. Donald Kroll was subpoenaed to testify at the divorce hearing. After several evasive answers, Kroll finally confessed to having possession of the retirement funds which he

claimed were in a savings account at the Oconomowoc State Bank. He denied having any other savings accounts. The trial judge ordered Kroll not to withdraw any funds from the Oconomowoc State Bank until the missing retirement money was returned.

The next day Kroll withdrew $7,677.29 from a Waukesha Marine Bank savings account without the knowledge of the court. Sometime later, the trial judge learned that Kroll had withdrawn funds from a savings account which he had stated under oath did not exist. The trial judge ultimately signed an order to show cause, drafted by Susan's attorney, why Kroll should not be held in contempt for disobeying the court's order.

Kroll immediately brought a motion in this court, in the nature of a supervisory writ, asking that the order to show cause be dismissed on the ground that since Kroll was not a party to the divorce, the trial judge had no authority to order Kroll, a mere witness, to do anything. Kroll concluded that the trial court therefore had no authority to hear why he should not be held in contempt of that order. This court denied the request. Implicit in our holding was the confirmation of the rule that a trial court in a divorce action has a duty to seek proper disclosure of all assets of the parties and may issue protective orders to nonparties in aid of its jurisdiction, if reasonable grounds exist. We ordered the contempt hearing to proceed.

On the day of the hearing, Kroll filed a request for substitution of judge prior to the commencement of testimony. The request was filed with the deputy clerk for Racine county. The trial court refused to honor the request, stating that the request must be filed with the clerk of courts and not the deputy clerk assigned to a particular court and present in the courtroom. The hearing was held, and Kroll was found in contempt. He was ordered committed to the Racine county jail

for six months unless he purged himself by paying the sum of $10,018.15 to a trustee appointed by the court. Kroll appealed, and a stay of confinement was issued by this court after bond was posted in the sum of $7,700.

Kroll claims he properly filed the substitution of judge request. We agree. Section 801.58(1), Stats., provides, in part:

801.58 Substitution of judge. (1) Any party to a civil action or proceeding may file a written request, signed personally or by his or her attorney, with the clerk of courts for a substitution of a new judge for the judge assigned to the case. The written request shall be filed preceding the hearing of any preliminary contested matters . . . .

The trial judge erred by holding that since the request was not filed with Lawrence Flynn, the Racine county clerk of circuit court, but rather with the deputy clerk present in Racine's satellite courtroom in Burlington, the statute had not been complied with, and he could continue as presiding judge.

Section 59.38, Stats., denominates all assistants to the clerk of courts as deputy clerks. The statute further provides that under certain circumstances, the deputies may perform all functions ordinarily handled by the clerk. The statute reads that, "In the absence of the clerk from the office or from the court they [deputies] may perform all the clerk's duties." Since Mr. Flynn was not present in the Burlington court, the deputy was authorized to act in his place.

We agree with Kroll that to read the statute as the trial judge did would lead to absurd results, a condition we are duty-bound to avoid. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission*, 84 Wis.2d 504, 528, 267 N.W.2d 609, 622 (1978). No better illustration exists than in Racine county where circuit judges al-

ternate sitting in Burlington, a city on the far western border of Racine county, at least once weekly. The clerk of court's office is in Racine, the county seat. The statute only mandates that the written request be filed preceding the hearing of any preliminary contested matters subject to time limits. The construction proferred by the trial judge would prevent some parties from being able to file a substitution immediately preceding the hearing and before any preliminary contested matters have taken place, even though brought within the statutory time limits. This construction would be contrary not only to the plain meaning of the statute but also to the customary practice of the bar in this state. We read secs. 59.38 and 801.58(1), Stats., to mean that a request for substitution in a civil matter may be brought in open court and personally handed to the deputy clerk assigned to that court as long as the following conditions are met. First, the substitution must be brought within the time limits set by the statute. Second, the substitution must be brought before the hearing takes place. Third, no preliminary contested matters may have taken place prior to the request for substitution being personally handed to the deputy clerk. *See State ex rel. Tarney v. McCormack,* 99 Wis.2d 220, 234, 298 N.W.2d 552, 559 (1980); *Bahr v. Galonski,* 80 Wis.2d 72, 87, 257 N.W.2d 869, 876 (1977).

During oral arguments, Susan's attorney claimed that such a construction of sec. 801.58(1), Stats., would allow last minute delay and surprise when the court is ready to hear the case, thus undermining the preparation made by the court and by opposing counsel. Further, it would necessitate additional financial expense. The argument is not compelling. Most trials and hearings take place long after the time limits for filing the substitutions have passed. For instance, the statute requires a plaintiff to file the request not later than sixty days after

the summons and complaint are filed *and* before the hearing of *any preliminary* contested matter. Other parties must file the request not later than sixty days after service of the summons and complaint upon them or preceding a preliminary contested matter. In *Pure Milk Products Cooperative v. National Farmers Organization,* 64 Wis.2d 241, 250, 219 N.W.2d 564, 569 (1974), it was held that the right to substitution can be waived by participation in preliminary motions in which the trial judge is allowed to receive evidence which of necessity is used and weighed in deciding ultimate issues. Section 801.58, Stats., is merely a codification of the *Pure Milk Products* case.

It is clear from a reading of *Pure Milk Products* that rare will be the case where a civil matter proceeds to trial or final hearing within the time limits, so as to allow a party to personally appear before the court with a timely substitution. Should that rare occasion arise, as it has here, the statute demands that the party's request for substitution be granted.

A contempt proceeding under sec. 295.03(1), Stats. (1977), is a special proceeding. This proceeding is commenced by filing a petition alleging the misconduct. Commencement, therefore, does not take place at the time of the contemptuous act. Service of necessary process is then made upon the offending person. The offending person becomes a "party" to the contempt proceeding, not to the principal action.

Section 801.58(1), Stats., allows any person made a "party" to a "proceeding" sixty days from date of service to file a request for substitution or until a preliminary contested matter has taken place. In the instant case, Kroll was served with an order to show cause dated November 15, 1980. Kroll had sixty days from the date of service to file his substitution request. He was

not a "party" before that time. His sixty days would be limited if he engaged in any preliminary contested matter before the trial judge.

Here, no preliminary contested matter had taken place following the actual commencement of the contempt proceeding. Although the trial judge had heard Kroll's original testimony and had signed the order to show cause, these are not preliminary contested matters. The reason for the statutory limitation "is that a litigant who does not like the way a judge is handling a matter should not be able to substitute a second judge simply because the litigant believes things are going badly before the first judge and hopes to obtain a more favorable tribunal." *Tarney, supra.* We conclude that when an alleged contemnor files a substitution request within sixty days following service of necessary process, the trial judge has no further jurisdiction unless that judge has ruled on a "preliminary contested matter" in the contempt action. Should the contempt hearing take place prior to the sixty days, then it is a contested matter within the definition of *Pure Milk Products, supra,* and the substitution cannot be filed after the commencement of the hearing.

Susan Bartell argues that even if the request were correctly filed, it was not timely filed. She points out that there was a proceeding in this court after the issuance of the order to show cause and before the contempt hearing in which we refused to dismiss the contempt proceeding and ordered the proceeding to continue. She cites sec. 801.58(7), Stats., which establishes a twenty day limit for a party to file a request for substitution following an appellate court determination. Section 801.58(7), Stats, reads as follows:

If upon an appeal from a judgment or order or upon a writ of error the appellate court orders a new trial

or reverses or modifies the judgment or order as to any or all of the parties in a manner such that further proceedings in the trial court are necessary, any party may file a request under sub. (1) within 20 days after the entry of the judgment or decision of the appellate court whether or not another request was filed prior to the time the appeal or writ of error was taken.

Susan concludes that the request for substitution was filed more than twenty days after this court's decision regarding the petition for supervisory writ.

We hold that sec. 801.58(7), Stats., does not apply to this case. The statute applies only when there has been an *appeal* or *writ of error* taken from a judgment or order of the circuit court. It does not apply to petitions in the nature of supervisory writs. Section 801.58(7), Stats., is an exception to the general rule codified in 801.58(1), Stats. Appeals and writs of error presuppose that a contested matter has already taken place. The exception is limited to those cases where there is a remand to the trial court for further proceedings. The trial court is therefore instructed to receive new or additional evidence to be used and weighed in deciding the ultimate issues. The clear meaning of the statute allows the parties to submit a request for substitution before any subsequent litigation.

The same reasoning does not hold for petitions for supervisory writs. These involve extraordinary remedies for ongoing contested matters prior to a determination on the merits. They are subject not to the exception under sec. 801.58(7), Stats., but rather to the rules provided under sec. 801.58(1), Stats. If a substitution of judge request in a civil action has not been timely filed, a party may not file a substitution request following a petition for supervisory writ. Alternatively, if a preliminary contested matter has not taken place and if the time

limit has not passed, a petition for supervisory writ will not change the time limits of sec. 801.58(1), Stats.

We conclude that sec. 801.58(7), Stats., does not apply in this case, and we remand to the trial court with directions that it disqualify itself and promptly request assignment of another judge under sec. 751.03, Stats., as provided by sec. 801.58(2), Stats.[1]

We are not in the habit of addressing issues unnecessary to the mandate of the court. We make an exception here due to the complexity of this case and to aid the administration of justice.

Kroll claims this contempt proceeding must be dismissed and recommenced because the trial court has no jurisdiction to hold a contempt hearing until it first receives a *verified* petition alleging misconduct under sec. 295.03, Stats. (1977). We contemplate that once a new judge is assigned, Kroll could ask the court to dismiss the proceeding because it has no jurisdiction to proceed without a verified petition. From the record, we cannot tell whether in fact the petition supporting the order to show cause is verified or unverified. We rule, however, that it makes no difference, and the absence of a verified petition should not be grounds in this case for the trial court to hold that it had no jurisdiction. When an error does not affect the substantial rights of an adverse party, the error may be disregarded. Sec. 805.18 (1), Stats. The petition in this case, verified or not, gave more than adequate notice of the proceeding and

---

[1] Section 801.58(2), Stats., reads as follows:

(2) After the written request has been filed, the named judge shall have no further jurisdiction in the action or proceeding except that the judge shall determine if the request is correct as to form and timely filed. If the request is correct as to form and timely filed, the named judge shall be disqualified and shall promptly request assignment of another judge under s. 751.03. The newly assigned judge shall proceed under s. 802.10.

the allegations against Kroll. It is quite obvious that the petition deals with the matters which took place in court while Kroll was on the witness stand. Therefore, as to much of the petition, Kroll had personal knowledge of the allegations. We hold Kroll's substantial rights were not affected by the petition being unverified.

*By the Court.*—Order vacated and cause remanded with directions to the trial court to disqualify itself and request assignment of another judge under sec. 751.03, Stats.