STATE of Wisconsin EX REL. JAMES L.J., Petitioner,

v.

CIRCUIT COURT FOR WALWORTH COUNTY, the Honorable
James L. Carlson, Presiding, the Honorable Stephen
A. Simanek, Chief Judge, Diane J. and Walworth
County Child Support Agency, Respondents.

Supreme Court

*No. 94-2043–W. Oral argument February 1, 1996.—Decided
April 19, 1996.*

(Also reported in 546 N.W.2d 460.)

For the petitioner there were briefs and oral argument by *Thomas M. Barrett*, Brookfield.

For the respondent, Walworth County Child Support Agency, there was a brief and oral argument by counsel, *Gary Rehfeldt*, Elkhorn.

For all other respondents the cause was argued by *James H. McDermott*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

SHIRLEY S. ABRAHAMSON, J.   This case is before us on certification, Wis. Stat. (Rule) 809.61 (1993-94),[1] of a petition for a supervisory writ. The

---

[1] Unless otherwise noted, all future references are to the 1993-94 volume of the Wisconsin statutes.

petition was brought by James L.J. (petitioner) directing James L. Carlson, judge for the circuit court of Walworth County, and Stephen A. Simanek, chief judge of the Second Judicial Administrative District, to honor the petitioner's request for substitution of judge pursuant to Wis. Stat. § 801.58(1). We deny the writ and affirm the chief judge's denial of substitution.

This case presents two issues. The first issue is whether the court of appeals has jurisdiction to hear a petition for a supervisory writ relating to a chief judge's ruling on a substitution request. If we determine that the court of appeals has jurisdiction to review a chief judge's ruling in a substitution request, the second issue is whether, as a matter of law, the substitution request in this case should have been denied because it was not timely.

We conclude that the court of appeals has jurisdiction to hear a petition for a supervisory writ relating to a chief judge's ruling on a substitution request. The court of appeals has jurisdiction over "all actions and proceedings in the courts in the district." Wis. Const. art. VII, § 5(3); Wis. Stat. § 752.02. The substitution request in this case arises in a nonsummary contempt proceeding[2] pending in a circuit court in the district. Accordingly, the court of appeals with jurisdiction over the contempt proceeding has jurisdiction over a substitution request arising in that proceeding.

We also conclude that because the nonsummary contempt proceeding initiated against the petitioner is

---

[2] For the distinction between summary and nonsummary contempt proceedings, see Wis. Stat. § 785.03(1), (2); *Upper Lakes Shipping v. Seafarers' Int'l Union*, 22 Wis. 2d 7, 17, 125 N.W.2d 324 (1963); Marna M. Tess-Mattner, *Contempt of Court: Wisconsin's Erasure of the Blurred Distinction Between Civil and Criminal Contempt*, 66 Marq. L. Rev. 369, 374-75 (1983).

attached to and derived from the previously initiated action against the petitioner, the petitioner's substitution request was untimely. We therefore affirm the denial of the petitioner's request for substitution and remand the cause to the circuit court for further proceedings consistent with this opinion.

## I.

The procedural facts giving rise to this case are not in dispute. The petitioner's request for substitution arose from a contempt petition filed on May 19, 1994, by the Walworth County Child Support Agency[3] alleging that the petitioner was in arrears on payment of child support and requesting that the circuit court find the petitioner in remedial contempt. The original action from which the support order arose was a paternity action; Judge Carlson had been assigned to the paternity action on April 2, 1990.

Judge Carlson denied the petitioner's substitution request on the ground that it was not timely. The petitioner sought review of the denial of the substitution request by Chief Judge Simanek pursuant to Wis. Stat. 801.58(2).[4] Chief Judge Simanek affirmed Judge Carl-

---

[3] The Walworth County Child Support Agency is also a respondent in this case.

[4] Wis. Stat. § 801.58(2) provides inter alia: "If the judge named in the substitution request finds that the request was not timely . . . that determination may be reviewed by the chief judge of the judicial administrative district . . . if the party . . . files a written request for review."

In *State ex rel. Town of Delavan v. Walworth Co. Circuit Court*, 167 Wis. 2d 719, 722 n.4, 482 N.W.2d 899 (1992), the court stated: "We do not decide today whether review by the chief judge was a necessary prerequisite to appeal to the court of appeals." This issue is not before this court in this case.

son's order, and the petitioner filed a petition for a supervisory writ in the court of appeals.

## II.

The first question we address is whether the court of appeals has jurisdiction to hear the petitioner's request for a supervisory writ. The nature and scope of the court of appeals' appellate, supervisory and original jurisdiction are set forth in the constitution and the statutes.

Wisconsin Const. art. VII, § 5(3) provides that the court of appeals shall have such appellate jurisdiction as the legislature may provide, but shall have no original jurisdiction other than by prerogative writ. Furthermore, according to the constitution, the court of appeals may issue all writs necessary in aid of its jurisdiction and shall have supervisory authority over all actions and proceedings in the courts in the district.[5] Wisconsin Stat. § 752.02 similarly provides that "[t]he court of appeals has supervisory authority over all actions and proceedings in all courts except the supreme court."[6]

---

[5] Wis. Const. art. VII, § 5(3) provides as follows:

The appeals court shall have such appellate jurisdiction in the district, including jurisdiction to review administrative proceedings, as the legislature may provide by law, but shall have no original jurisdiction other than by prerogative writ. *The appeals court may issue all writs necessary in aid of its jurisdiction and shall have supervisory authority over all actions and proceedings in the courts in the district* (emphasis added).

[6] *See also* Wis. Stat. § 752.01, which provides as follows:

**Jurisdiction.**

**(1)** The court of appeals has appellate jurisdiction as provided by law.

The court of appeals has previously grappled with the issue of whether it has jurisdiction to review the denial of a substitution request on a petition for supervisory writ.[7] In *State ex rel. Gilboy v. Waukesha Co. Circuit Court*, 119 Wis. 2d 27, 349 N.W.2d 712 (Ct. App. 1984), the court of appeals had concluded that it could not exercise original jurisdiction when a petition for a supervisory writ pertained to a chief judge's denial of a substitution request. Reasoning that under SCR 70.19[8] a chief judge's actions on a substitution request "constitute the discharge of administrative duties as the administrative chief of the judicial district," *Gilboy*,

---

(2)  The court of appeals has original jurisdiction only to issue prerogative writs.

(3)  The court of appeals may issue all writs necessary in aid of its jurisdiction.

[7] Wisconsin Stat. (Rule) § 809.51(1) states that "[a] person may request the court [of appeals] to exercise its supervisory jurisdiction or its original jurisdiction to issue a prerogative writ over a court and the presiding judge, or other person or body, by filing a petition and supporting memorandum . . . ."

[8] SCR 70.19 (1996) provides, in pertinent part, as follows:

**Duties of the chief judge.**

(1)  The chief judge is the administrative chief of the judicial administrative district. The chief judge is responsible for the administration of judicial business in circuit courts within the district, including its personnel and fiscal management. The general responsibility of the chief judge is to supervise and direct the administration of the district, including the judicial business of elected, appointed and assigned circuit judges.

. . .

(3)  In the exercise of his or her general responsibility, the chief judge has the following duties:

(a)  Assignment of judges within each judicial district . . . .

(b)  Maintenance of a system for and effective management of case flow through the judicial administrative district.

119 Wis. 2d at 30, the court of appeals in *Gilboy* concluded that such administrative actions were beyond the scope of the jurisdiction conferred upon the court of appeals under Wis Const. art. VII, § 5(3) and Wis. Stat. § 752.02. Focusing on language in the constitutional provision and in Wis. Stat. § 752.02 stating that the court of appeals has supervisory jurisdiction over "actions and proceedings" in the courts, the court of appeals reasoned that a chief judge's administrative actions were neither actions nor proceedings as those terms are used in the constitution and the statutes. *Id.* at 30-31. The court of appeals took the position that because the chief judge is acting in an administrative capacity, the chief judge's decision is reviewable only by this court, which under the constitution "shall have . . . administrative authority over all courts." Wis. Const. art. VII, § 3.

In its certification memorandum to the court in the instant case, the court of appeals raises the question of whether *Gilboy* remains good law. The court of appeals points out that in *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 394 N.W.2d 732 (1986), this court characterized as "well reasoned" the *Gilboy* court's conclusion that the court of appeals "has no supervisory jurisdiction over the chief judge of a judicial administrative district acting in his administrative capacity." *Swan,* 133 Wis. 2d at 91.

As the court of appeals points out, however, in the subsequent case of *State ex rel. Town of Delavan v. Walworth Co. Circuit Court,* 167 Wis. 2d 719, 482 N.W.2d 899 (1992), this court stated that "[w]e . . . do not review *Gilboy* today and make no determination as

to whether *Gilboy* is a correct interpretation of the law." *Delavan*, 167 Wis. 2d at 723 n.4.[9]

Having now had occasion to review *Gilboy*, we reject its interpretation of Wis Const. art. VII, § 5(3) and Wis. Stat. § 752.02.

We conclude that Wis. Const. art. VII, § 5(3) and Wis. Stat. § 752.02 authorize the court of appeals to exercise its supervisory authority over a chief judge who is ruling on a substitution request. The constitution expressly vests the court of appeals with supervisory authority over all actions and proceedings in all courts except the supreme court. The statutes restate this grant of authority. We conclude that a substitution request is inseparable from the underlying action or proceeding in which substitution is requested and therefore the court of appeals has supervisory authority over a chief judge ruling on a substitution request.

The *Gilboy* court looked only to the chief judge's role in the substitution request, labeled it an administrative function rather than an action or proceeding

[9] The *Delavan* court reserved judgment on *Gilboy* because the "sole issue" in that case concerned "whether § 801.58(7) [creating an unqualified right to substitution when further circuit court proceedings are necessary after remand from an appellate court] applies in a ch. 227 judicial review." *Delavan*, 167 Wis. 2d at 721. The *Delavan* court nevertheless referred to *Gilboy* because the court of appeals had relied upon *Gilboy* when stating, in its certification memorandum, that it was "unable to make a determination that will compel the chief judge of the judicial administrative district to act if that determination is contrary to the chief judge's decision." *Delavan*, 167 Wis. 2d at 722 n.4.

and concluded that it had no authority over administrative actions. The court of appeals failed to consider the context in which the chief judge was acting. The issues of whether a substitution request is timely or whether substitution is available raise questions of law regarding the interpretation of a statutory right. Although the subject of judicial substitution affects the administration of the courts, the exercise of the statutory right to substitution in any particular case raises a question of law rather than a question of court administration. The circuit judge's ruling on a substitution request is thus a judicial decision rendered as part of the underlying action or proceeding. Because the court of appeals has jurisdiction over the underlying proceedings in which a substitution request arises, it should also have jurisdiction over the legal issues raised in the substitution request itself.

Furthermore, interpreting the constitution and statutes to allow the court of appeals to exercise jurisdiction over a petition for a supervisory writ relating to a chief judge's denial of a substitution request represents sound appellate practice. Under our constitutional division of appellate functions, the court of appeals is designed to retain "a close relationship to the circuit court in respect to the superintending control of circuit court functions." *Swan*, 133 Wis. 2d at 93. Hence the court of appeals is better suited to decide these issues and thereby provide a consistent, uniform interpretation of the substitution statutes.[10]

---

[10] In *Gilboy*, the court of appeals suggested that the proper forum for the chief judge's denial of a substitution request is the supreme court rather than the circuit court or court of appeals. *State ex rel. Gilboy v. Waukesha Co. Circuit Court*, 119 Wis. 2d 27, 33, 349 N.W.2d 712 (1984).

In *Gilboy*, the court of appeals intimated that before it could exercise appellate review of the chief judge's denial of the substitution request, the aggrieved party had to apply for a writ of mandamus to the circuit judge to compel the judge to perform an act the judge already had refused to perform. *Gilboy*, 119 Wis. 2d at 32-33, (citing *State ex rel. Dept. of Agriculture v. Aarons*, 248 Wis. 419, 423, 22 N.W.2d 160 (1946)). In *Aarons* the supreme court acknowledged that petitioning the circuit court for a writ of mandamus after the circuit court had already denied relief would ordinarily be a useless act.

No one disputes that a person aggrieved by a chief judge's ruling on a substitution request is entitled to appellate review of the chief judge's decision. Delaying an aggrieved party's opportunity for review of a circuit judge's or chief judge's substitution decision until review of the final disposition of the case might deprive that party of the statutory right of substitution and might be wasteful of judicial effort.[11]

Accordingly we conclude that the court of appeals has jurisdiction to review a chief judge's ruling on a substitution request. *Gilboy*, 119 Wis. 2d 27, is hereby

---

[11] Citing Wis. Const. art. VII, § 5(3) (the court of appeals "shall have no original jurisdiction other than by prerogative writ") and Wis. Stat. § 752.01(2) ("[t]he court of appeals has original jurisdiction only to issue prerogative writs"), counsel for the petitioner also argues that this case falls within the constitutional and statutory provisions authorizing the court of appeals to exercise original action jurisdiction by prerogative writ. We need not revisit this issue, also discussed in *Swan*, because this case falls within the court of appeals' "supervisory authority over all actions and proceedings in all courts except the supreme court." Wis. Const. art. VII, § 5(3); Wis. Stat. § 752.02.

overruled. We also overrule the language in *Swan* suggesting approval of the holding and reasoning of *Gilboy*. *Swan*, 133 Wis. 2d at 91.

## III.

The second issue presented concerns the petitioner's claim that because his substitution request was brought within the time limits prescribed by Wis. Stat. § 801.58(1), the judges erred when they ruled that his request was untimely. Wisconsin Stat. § 801.58(1) requires that a substitution request be filed preceding the hearing of any preliminary contested matters "and, if by the plaintiff, not later than 60 days after the summons and complaint are filed or, if by any other party, not later than 60 days after service of a summons and complaint upon that party." Because he filed his substitution request 17 days after the contempt proceeding against him was initiated, the petitioner reasons that he was well within the 60-day statutory limit and was therefore entitled to substitution.

The petitioner's claim that he was within the time limits prescribed by Wis. Stat. § 801.58(1) rests on his argument that a nonsummary contempt proceeding is separate and distinct from the underlying action to which it is related. Accordingly, the petitioner urges, the 60-day period within which he was entitled to request substitution must be measured from the date in 1994 when he received notice of the contempt proceeding rather than from the date in 1990 when the underlying paternity action giving rise to the contempt proceeding had been commenced. In other words, the petitioner contends that when a contempt proceeding is inaugurated, the offending person thereby becomes a party to that proceeding. Brief for Petitioner at 25.

Citing the court of appeals' decision in *McGee v. Racine Co. Circuit Court*, 150 Wis. 2d 178, 441 N.W.2d 308 (Ct. App. 1989), the petitioner points out that contempt proceedings are, as the *McGee* court stated in its decision, "*sui generis*"; they are "neither civil actions nor criminal prosecutions within the ordinary meaning of those terms." *McGee*, 150 Wis. 2d at 184. If a contempt proceeding is not a civil action, the petitioner reasons, then the contempt proceeding initiated against him is necessarily distinct from the underlying civil action to which it is related.

While a contempt proceeding may be "*sui generis*," we disagree with the petitioner's conclusion that it is therefore a separate proceeding for purposes of the substitution statute. Rather than constituting a separate proceeding for purposes of substitution, a contempt proceeding is called into being by, dependent upon, and addressed to the underlying action in which it arises.[12]

This understanding of the relationship between a contempt proceeding and the principal action from which it is derived draws support from the contempt statute itself. Wisconsin Stat. § 785.03(1)(a) states that a person seeking imposition of a contempt sanction should "fil[e] a motion for that purpose *in the proceed-*

---

[12] The petitioner attempts to bolster his argument that a contempt proceeding is distinct from the underlying action by noting that a nonsummary contempt procedure not only requires notice, but a separate hearing or trial on the contempt charge. Wis. Stat. § 785.03(1)(a); *Gower v. Marinette Co. Circuit Court*, 154 Wis. 2d 1, 8-9, 452 N.W.2d 355 (1990). We reject this argument as well. The fact that a court must hear new evidence in a nonsummary contempt hearing does not transform that hearing into a distinct action, but rather augments the already existing record in the principal action.

507

*ing to which the contempt is related"* (emphasis added). The Judicial Council Committee note appended to Wis. Stat. § 785.03(1)(a), noting that "the relationship between a contempt proceeding seeking a remedial sanction and the proceeding out of which it arose was not clear" under prior law, states that "[t]his section makes it clear *that the motion filed in the principal proceeding* is the proper procedure to be used" (emphasis added). The court has frequently referred to drafters' notes for help in gleaning legislative intent and interpreting the statutes. *State v. Lee,* 197 Wis. 2d 960, 965 n.3, 542 N.W.2d 143 (1996) (collecting cases). Here those notes underscore what the statute itself signifies: that a contempt proceeding is part of the principal action in which that proceeding is filed, heard and decided.

The petitioner relies heavily on *Kroll v. Bartell,* 101 Wis. 2d 296, 304 N.W.2d 175 (Ct. App. 1981). In *Kroll* the court of appeals, having stated in dicta that "[a] contempt proceeding under sec. 295.03(1), Stats. (1977)" is a "special proceeding,"[13] concluded that an alleged contemnor "becomes a 'party' to the contempt proceeding, not to the principal action." *Kroll,* 101 Wis. 2d at 302. Therefore, the *Kroll* court concluded, under Wis. Stat. 801.58(1) an alleged contemnor had 60 days from the date of being served with the necessary pro-

---

[13] Wisconsin Stat. § 295.03(1) (1977) was an earlier version of the contempt statute. It was repealed and replaced by chapter 785 in May of 1980. *See* §§ 10-11, ch. 257, Laws of 1979. Wisconsin Stat. § 295.03(1) (1977) provides, in pertinent part:

Upon a verified petition alleging misconduct under s. 295.01, the judge in the principal action, or another judge if the original judge is unable to act, may take jurisdiction of the special proceeding of contempt and issue any necessary process, including but not limited to an order to show cause . . . .

cess in the contempt proceeding to file a substitution of judge request in relation to that proceeding.

As the petitioner himself acknowledges, however, *Kroll* is distinguishable on its facts. Brief for Petitioner at 26. The alleged contemnor in *Kroll* was a witness rather than a party. Unlike the petitioner in the instant case, who had been a party in the underlying action for four years at the time the contempt proceeding at issue here was initiated, a witness would have no occasion to file a substitution of judge request prior to the initiation of a proceeding alleging that the witness was a contemnor. A witness against whom a contempt proceeding has been filed should arguably be accorded the same time period in which to file a substitution request that the parties to the action would be allowed. However, that question is not currently before us and has not been briefed.[14]

What is before us today is the question of whether one already joined as a party, whose opportunity to request a substitution of judge has long since lapsed, can nevertheless revive that opportunity through a subsequently initiated contempt proceeding naming that person as a contemnor. *Kroll* does not address this question and therefore does not support the petitioner's position.

---

[14] In his review of Judge Carlson's denial of the petitioner's substitution request, Chief Judge Simanek wrote as follows:

> The *Kroll* case dealt with a significantly different set of facts and is easily distinguishable. In *Kroll* a contempt action was commenced against a *non-party* witness for disobedience of a Court Order to not dispose of property. That contempt action was a new action only as to the witness, a non-party to the underlying action. Therefore, the substitution request by the non-party witness was timely. That is clearly not the case here. Judge Carlson has had this case for over four years. The request of the respondent, a party, to substitute another judge for Judge Carlson is not timely.

As both Judge Carlson and Chief Judge Simanek observed in ruling on the petitioner's substitution request, if the petitioner is correct in asserting that a contempt proceeding should be treated separately from the principal action in which it arises, a party to an underlying action could request a substitution every time a motion alleging that party's contempt was filed. Counsel for the petitioner conceded that under the petitioner's theory, if a person were served with ten separate contempts in relation to one underlying action, that person would be entitled to request ten judicial substitutions.

A statute should be construed so as to avoid absurd results. *State v. Peete*, 185 Wis. 2d 4, 17, 517 N.W.2d 149 (1994). The petitioner's interpretation of the contempt statute would produce such results, as the facts of the case before us illustrate. Since the initiation of the underlying paternity action in 1990, the petitioner has been found in contempt three times for nonpayment of child support. Had each finding of contempt been grounds for judicial substitution, scarce judicial resources would have been expended as successive judges were forced to familiarize themselves with the particulars of the case. Although the contempt power is designed to preserve a court's authority to conduct its business, under the petitioner's theory each successive judge assigned to this case would be faced with the dilemma of knowing that the probable cost of exercising that authority would be ensuing substitution, thereby hindering rather than furthering the court's business.

The language of the contempt statute, the drafter's notes accompanying that statute, canons of statutory

construction, and concerns for judicial efficiency and integrity all suggest that a contempt proceeding is derivative of and attached to the principal action in which it arises. Accordingly we affirm Chief Judge Simanek's rejection of the petitioner's request for judicial substitution.[15]

*By the Court.*—The petition for a supervisory writ is denied.

---

[15] Because we hold that the nonsummary contempt proceeding initiated against the petitioner is attached to and derived from the previously initiated action against the petitioner, we do not address the issue of whether the policy considerations informing the *Bacon-Bahr* line of cases would provide an additional ground for denying substitution in this case. For further discussion of the *Bacon-Bahr* line of cases, see *State ex rel. Tarney v. McCormack*, 99 Wis. 2d 220, 226-33, 298 N.W.2d 552 (1980) (stating that the *Bacon-Bahr* series of cases establish a black letter rule barring the statutory right to substitute a judge in a proceeding to modify a divorce judgment).