STATE of Wisconsin EX REL. J. H. FINDORFF & SON, INC., Petitioner-Petitioner,

v.

CIRCUIT COURT FOR MILWAUKEE COUNTY, the Honorable Patrick T. Sheedy, presiding, John Trenhaile (d/b/a), Trenko Electric, Inc., St. Paul Fire and Marine Insurance Company and Milwaukee Metropolitan Sewerage District, Respondents.

Supreme Court

*No. 97–3452–W. Oral argument November 3, 1999.—Decided April 6, 2000.*

**2000 WI 30**

(Also reported in 608 N.W.2d 679.)

For the petitioner-petitioner there were briefs by *Michael B. Van Sicklen, Michael S. Heffernan* and *Foley & Lardner*, Madison, and oral argument by *Michael B. Van Sicklen.*

For the respondent the cause was argued by *James H. McDermott*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. N. PATRICK CROOKS, J. J.H. Findorff & Son, Inc. (Findorff), the petitioner, seeks review of an unpublished court of appeals decision,[1] which ruled against Findorff on its request for substitution, after remand from an appeal in an earlier action.

¶ 2. In the earlier action, the court of appeals reversed and remanded a circuit court decision against Findorff relating to breach of contract during a construction project. Findorff requested a judicial substitution on remand. Milwaukee County Circuit Court Judge William J. Haese, the judge assigned in this action, granted the substitution request, but Chief Judge Patrick T. Sheedy denied the request upon review. Findorff then petitioned the court of appeals for a supervisory writ of mandamus. The court of appeals affirmed on the basis that the court of appeals' original directives on remand required "specific action," and therefore, the right of substitution did not attach.

¶ 3. We conclude that the directives on remand in the original action required "further proceedings" to which the right of substitution does attach. The directives were for "further proceedings" because they required the circuit court to exercise its discretion, instead of merely discharging a ministerial duty. We also conclude that the chief judge was without authority to review and reverse the circuit court judge's decision granting Findorff's substitution request.

---

[1] *State ex rel. J.H. Findorff & Son, Inc. v. Circuit Court for Milwaukee County*, unpublished slip op. (Ct. App. March 5, 1999).

Under both the Wisconsin statutes and the Supreme Court Rules, a chief judge may only review orders denying substitution, not those granting a substitution request. Accordingly, we reverse the court of appeals' decision and grant the petition for supervisory writ.

## I.

¶ 4. The facts in this case are not disputed. John Trenhaile, doing business as Trenko Electric, Inc. (Trenko),[2] worked as an electrical subcontractor for Findorff, the general contractor in a large sewer construction project. After Trenko completed most of its work on the project, three of Trenko's unsecured creditors petitioned to have Trenko placed in involuntary bankruptcy. Two months later, Trenko halted its work, forcing Findorff to hire another electrical contractor and subcontractor to finish the project. Trenko then brought an action against Findorff, the Milwaukee Metropolitan Sewerage District (MMSD), and Saint Paul Fire and Marine Insurance Company, Findorff's surety, as the bankruptcy assignee. Trenko made claims against Findorff, *inter alia*, for breach of contract, restitution, and unjust enrichment. Findorff counterclaimed that Trenko breached the contract by not finishing its work.

¶ 5. The case was tried in a bench trial before the Honorable William J. Haese of the Milwaukee County Circuit Court. The circuit court found that Trenko lost profits resulting from a breach of contract. He awarded Trenko approximately $350,000.00 in damages against Findorff, which was 50% of the original damage award.

---

[2] John Trenhaile did not file a brief in this case, but joined the position and arguments of the Respondent, the Circuit Court for Milwaukee County.

Trenko further recovered $5,000.00 from Findorff under a theory of unjust enrichment. The circuit court also denied Findorff's claim for offsets and dismissed the Saint Paul Fire and Marine Insurance Company from the lawsuit.

¶ 6. Findorff appealed, and Trenko cross-appealed from the judgment. The court of appeals reversed the circuit court's judgment. *Trenhaile v. J. H. Findorff Son, Inc.*, unpublished slip op. (Ct. App. September 16, 1997). It found that the circuit court had not made factual findings to entitle Trenko to recovery for future lost profits, had used incorrect damage figures, and had failed to explain why it dismissed Findorff's surety or denied Findorff's offsets. Slip op. at 2–3. The court of appeals remanded the case to the circuit court with directives stating:

> On remand, the trial court shall: (1) make detailed factual findings and determine whether the facts support an award of consequential damages, foreseeability and reasonable certainty; (2) either utilize the damage figures introduced into evidence or make specific findings and conclusions as to why another damage figure is being used; (3) reinstate the surety, Saint Paul, and determine what damage, if any, the surety must pay; and (4) determine whether and on what legal basis Findorff's offsets and defenses should be denied. Finally, the trial court should determine any damage amounts without resorting to tort principles.

Slip op. at 13.

¶ 7. Upon remand, Findorff moved to substitute Judge Haese under Wis. Stat. § 801.58(7)(1995–96).[3]

---

[3] All subsequent references to the Wisconsin Statutes are to the 1995–96 text unless otherwise noted.

Judge Haese granted the request, and the case was temporarily reassigned to Judge Lee E. Wells.[4] However, after a hearing on the substitution request conducted by telephone conference on November 7, 1997, the chief judge denied the substitution and reassigned the case to Judge Haese. The chief judge noted that Judge Wells took over Judge Haese's calendar on rotation when Judge Haese transferred to the family division. He stated that he was reassigning the case to Judge Haese because Judge Wells had objected to being assigned a case on remand, and "that to assign this to Judge Wells, I am basically ordering a completely new trial." (Pet. App. at 148.) He concluded that the right of substitution did not attach since the court of appeals gave directives that were "very specific" and did not call for a new trial.

¶ 8. Findorff then filed a Petition for Supervisory Relief[5] with the court of appeals. In the petition

---

[4] The Clerk of the Circuit Court issued a notice on October 24, 1997, that the case had been rotated to Judge Wells. (Pet. App. at 137.) However, on October 27, the Clerk sent another notice stating that the file had been returned to Judge Haese "per the Court of Appeals [sic] remand." (Pet. App. at 138.)

[5] This petition for supervisory writ could be characterized as one asking for a writ of mandamus. A writ of mandamus is a type of supervisory writ. *Eau Claire Leader-Telegram v. Barrett*, 146 Wis. 2d 647, 651, 431 N.W.2d 741 (Ct. App. 1988). "Mandamus is a writ that grants a higher court supervisory authority to compel a private or municipal corporation or an inferior court to perform a particular act." *Id.* at 650 (citing *Gross v. Midwest Speedways, Inc.*, 81 Wis. 2d 129, 135, 260 N.W.2d 36, 38–39 (1977)). Petitions simply requesting "supervisory" relief recognize the similarity in substance between a writ of mandamus and a writ of prohibition. Heffernan, *Appellate Practice and Procedure in Wisconsin*, § 10.2 (2d. ed. 1995)(citing *Petition of Pierce-Arrow Motor Car Co.*, 143 Wis. 282, 285, 127

Findorff requested that the court of appeals order the circuit court to grant the substitution request. On November 20, 1997, Judge Haese first informed the parties that he had originally granted the substitution request. (Pet. App. at 166.) Until that moment, the parties believed that Judge Wells had been assigned the case on rotation. On that basis, Findorff filed a supplement to its petition arguing that a chief judge may only review substitution in a case in which a circuit court judge already has denied a substitution request. Findorff therefore claimed that Judge Sheedy erred by returning the case to Judge Haese. Judge Haese ordered that "further proceedings" be stayed pending resolution of the substitution issue.

¶ 9. The court of appeals denied the petition on March 5, 1999. It first concluded that Findorff's substitution request was timely because it was filed within twenty days after the clerk of the circuit court received the court of appeals' remittitur, and it "clearly sought judicial substitution." Slip op. at 4.

¶ 10. It then held that according to *Cuccio v. Rusilowski*, 171 Wis. 2d 648, 492 N.W.2d 345 (Ct. App. 1992), the right of substitution did not attach in this case. "[T]he right to substitution exists when the remand is for a new trial or for proceedings other than specific action," it noted. Slip op. at 4. *Rusilowski* states that a mandate that does not require further development of the record is a mandate for "specific action."

---

N.W. 998, 999 (1910)). In fact, a supervisory writ is a combination of the writs of mandamus and prohibition. *State ex rel. Dressler v. Racine County Cir. Ct.*, 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991). Wisconsin Stat. § (Rule) 809.51 provides the grounds for petitioning and granting a supervisory writ. Wisconsin Ch. 783 provides for writs of mandamus and prohibition.

Slip op. at 4–5 (citing *Rusilowski*, 171 Wis. 2d at 654, 492 N.W.2d at 348). Based on this reasoning, the court of appeals concluded that the directives at issue required "specific action" because "no new facts need be garnered, no added record need be made; rather, the trial court is left with the same record and need not add to it." Slip op. at 5. Therefore, it held that the right of substitution does not exist here. Slip op. at 5.

## II.

¶ 11. In this case we must determine whether to grant Findorff's petition for a supervisory writ. A petition for a supervisory writ is granted only if an appeal does not offer an adequate remedy, grave hardship will result from a circuit court's actions, and a party makes a prompt request for relief. *State ex rel. Oman v. Hunkins*, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984).

¶ 12. The first issue we address in determining whether to grant the writ is what constitutes a remand for "further proceedings" pursuant to Wis. Stat. § 801.58(7), entitling the parties in a case to substitution of a judge. This issue presents a question of statutory interpretation, which we review *de novo*. *Cemetery Serv., Inc. v. Department of Reg. & Licens.*, 221 Wis. 2d 817, 823, 568 N.W.2d 191 (1998).

¶ 13. Wisconsin Stat. § 801.58(7)[6] "creates an unqualified right to substitution when further trial

---

[6] The enactment and subsequent amendments of this statute by the legislature and the Supreme Court Rules exemplify the shared powers of the legislature and this court. Wis. Stat. § 801.58.

437

court proceedings are necessary after remand from an appellate court." *Oman*, 120 Wis. 2d at 91. It provides:

> If upon an appeal from a judgment or order or upon a writ of error the appellate court orders a new trial or reverses or modifies the judgment or order as to any or all of the parties in a manner such that further proceedings in the trial court are necessary, any party may file a request under *sub.* (1) [for substitution of judge] within 20 days after the filing of the remittitur in the trial court whether or not another request was filed prior to the time the appeal or writ of error was taken.

Wis. Stat. § 801.58(7).

¶ 14. Following remand and remittitur, a circuit court may conduct three types of proceedings: 1) a proceeding in which a circuit court takes "specific action" as ordered; 2) a proceeding in which a circuit court conducts a new trial; or 3) any further proceedings other than those mentioned above. Wis. Stat. § 808.08(1)–(3).[7]

---

[7] The full text of Wis. Stat. § 808.08(1)–(3) states:

**Further proceedings in trial court.** When the record and remittitur are received in the trial court:

(1) If the trial judge is ordered to take specific action, the judge shall do so as soon as possible.

(2) If a new trial is ordered, the trial court, upon receipt of the remitted record shall place the matter on the trial calendar.

(3) If action or proceedings other than those mentioned in sub. (1) or (2) is ordered, any party may, within one year after receipt of the remitted record by the clerk of the trial court, make appropriate motion for further proceedings. If further proceedings are not so initiated, the action shall be dismissed except that an extension of the one-year period may be granted, on notice, by the trial court, if the order for extension is entered during the one-year period.

¶ 15. These two statutes have been read together to provide that no right of substitution exists if a mandate only requires a circuit court to take "specific action" in accordance with Wis. Stat. § 808.08(1). *Rusilowski*, 171 Wis. 2d at 653. *See also State ex rel. Ondrasek v. Circuit Court for Calumet County*, 133 Wis. 2d 177, 182–83, 394 N.W.2d 912 (Ct. App. 1986). If a mandate calls for "further proceedings" as contemplated by § 808.08(3), the parties have a right to substitution upon request. *Id.* The significant question in this case therefore pertains to the difference in definition between a "specific action" and "further proceedings."

¶ 16. The two most recent court of appeals cases addressing this issue appear to conflict because they define "further proceedings" differently. In *Ondrasek*, the court of appeals defined "further proceedings" by examining the definition of "specific action." The court stated that "the use of the word 'specific' contemplates something more precise and definite" than the use of the phrase "further proceedings." *Ondrasek*, 133 Wis. 2d at 183. It concluded that its remand in the *Ondrasek* case did not direct any "specific action" because the directives pertained to property division and family support in a divorce action. *Id.* The court aptly stated that "recognizing the *discretion* accorded to trial courts in matters concerning property division and family support, a specific directive would have been wholly inappropriate." *Id.* (emphasis added). From this statement it appears that the court differentiated between "specific action" and "further proceedings" by examining whether a circuit court is able to exercise discretion after a remand. The court also noted that Wis. Stat.

§ 808.08(3), relating to "further proceedings," "is written in 'catch-all' terms." *Id.* at 183. The court held by implication that the right of substitution would not attach to a mandate only requiring "specific action" by a circuit court. *See id.* at 184 n.3.

¶ 17. In *Rusilowski*, a later case, the court of appeals characterized the remand at issue in *Ondrasek* as one that "required the trial court to *add* to the record and make further fact-finding after revaluing and recalculating." *Rusilowski*, 171 Wis. 2d at 653–54. By this the court implied that if a circuit court must add to the record and make further fact-finding, then it is engaged in "further proceedings" and is subject to substitution. The court held that the directives on remand at issue in *Rusilowski* required "specific action" "[b]ecause this mandate did not order extensive action on the part of the probate court. . . . No new facts need be garnered; no added record need be made. Rather, the trial court is left with the same record and need not add to it." *Id.* at 654.

¶ 18. Judge Snyder dissented from the majority in *Rusilowski* for three reasons. Judge Snyder believed that the mandate in the original appeal "was sufficiently open-ended to justify the trial court's honoring the substitution request." *Rusilowski*, 171 Wis. 2d at 655 (Snyder, J., dissenting). He also criticized the majority's interpretation of *Ondrasek* as "inferential" and "unnecessarily limit[ing] the discretion vested in the circuit court upon remand."[8] *Id.* Finally, he con-

---

[8] The concurrence authored by Justice Bradley alleges that the *Rusilowski* dissent focused on the above-stated issue, and argues that the "dissent did not hinge its determination on whether a 'specific action' for substitution purposes was the equivalent of a governmental ministerial duty." Concurrence authored by Justice Bradley at ¶¶ 50–54. We again draw the

cluded that *Rusilowski* is distinguishable from *Ondrasek* on its facts.

■

¶ 19. In his dissent, Judge Snyder explained the difference between "specific action" and "further proceedings" by examining the nature of a circuit court's discretion on remand. Judge Snyder first examined *Fullerton Lumber Co. v. Torborg*, 274 Wis. 478, 483–84, 80 N.W.2d 461 (1957), which stands for the proposition that a circuit court must abide by the directives stated in a mandate, but may resolve any issues left unanswered by the decision. He stated:

> Because *Fullerton* allows a trial court some leeway to act, even where the appellate court 'directs the entry of a particular judgment,' *id.*, I believe that the mandate from the appellate court must unequivocally restrict the action to be taken on remand to the purely ministerial; if the remand leaves any room for doubt about the scope, then the trial judge has discretion to act within the boundaries circumscribed by that remand.

*Rusilowski*, 171 Wis. 2d at 656 (citing *Fullerton*, 274 Wis. at 483–84). He therefore appeared to define "specific action" as "purely ministerial," and to draw the line between "specific action" and "further proceedings"

---

reader's attention, as we do in ¶ 19, to the dissent's precise language: "I believe that the mandate from the appellate court must unequivocally restrict the action to be taken on remand to the purely ministerial; if the remand leaves any room for doubt about the scope, then the trial judge has discretion to act within the boundaries circumscribed by that remand." *Cuccio v. Rusilowski*, 171 Wis. 2d 648, 656, 492 N.W.2d 345 (Ct. App. 1992)(Snyder, J., dissenting). We find this language to establish clearly that the dissent did indeed equate a specific action with a ministerial duty.

at the point where a circuit court has any discretion to act.

¶ 20. We agree with the court in *Ondrasek* and the *Rusilowski* dissent that the distinction between a "specific action" and "further proceedings" lies with a judge's discretion on remand.[9] This decision resolves the conflict that existed between *Ondrasek* and *Rusilowski*. We narrowly define a "specific action" as a purely ministerial duty. In other words, a ministerial duty is an action that requires no exercise of discretion on the circuit court's part.[10] We find the definition of a

[9] Although we hold today that a circuit court must distinguish between "specific action" and "further proceedings" by examining whether directives require the circuit court to exercise discretion, we recognize that the court of appeals could indeed state in its mandate that it anticipates further proceedings on remand, or that only the specific action, as outlined, is required. The concurrence authored by Justice Bradley suggests that this could be done in each and every case upon remand by this court and by the court of appeals. Concurrence authored by Justice Bradley at ¶ 65. Our decision certainly does not prohibit such an approach.

It is difficult to understand why the concurrences authored by Justice Wilcox and Justice Bradley engage throughout in dire predictions. The right to substitution in a civil case where, upon remand, further proceedings are necessary is not a blow to efficient judicial administration. Rather, it should be recognized that the distinction adopted herein is consistent with Wisconsin's long history of honoring substitution requests in civil cases, and will not, we believe, result in a significant increase in the number of substitution requests.

[10] The following are examples of ministerial duties a circuit court may encounter on remand: 1) a remand with instructions to dismiss a complaint, cross-claim, or counterclaim; 2) a remand requiring a remittitur, or requiring a circuit court to

public officer's ministerial duties useful in this context also. Ministerial duties are those that are "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976).

■

¶ 21. If a circuit court may exercise discretion in discharging its duties on remand, however, then those duties comprise "further proceedings."[11] While the subject was one of sentencing discretion, the following statement by this court is helpful in understanding the term "discretion": "Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971)(describing sentencing as a discretionary judicial act).

---

remand to an administrative agency; 3) a remand with instructions to impose statutory costs; 4) a remand with instructions to impose statutory attorney's fees; or 5) a remand with instructions to enter judgment in accordance with a prior jury verdict.

[11] We disagree with the state that whether additional fact-finding is required is the key to defining further proceedings. (Resp. Br. at 21–22.) If a judge must conduct further fact-finding, that fact-finding will often require an exercise of discretion. However, that may not always be the case. A judge may allow additions to the record without then exercising discretion, or conversely, he or she may exercise discretion without needing to add any more facts to the record.

¶ 22. The plain language of Wis. Stat. § 801.58 supports the distinction we draw between "specific action" and "further proceedings." Section 801.58(1) and (7) do not place any conditions on filing except timeliness.[12] That a party may request substitution for any reason demonstrates the statute's wide purview and suggests that § 801.58(7) should be liberally construed to permit substitutions. By defining "further proceedings" broadly, we are therefore consistent with the plain language of § 801.58(7).

¶ 23. This distinction also is consistent with our notion of a fair trial. The United States Supreme Court has articulated the importance of a fair trial by stating:

---

[12] Under Wis. Stat. § 801.58, a party does not need to file an affidavit of prejudice, or state that a belief that a judge will not conduct a fair trial. Grenig & Harvey, 3 *Wisconsin Practice*, § 158.1, p. 173 (1994)(citing Seaburg, *The Civil Peremptory Substitution Statute*, 59 Wis. Bar Bull. 8, 9 (Jan. 1986)).

We also note that *In the Matter of the Civil Contempt of Kroll*, 101 Wis. 2d 296, 304 N.W.2d 175 (Ct. App. 1981), does not pertain to this case. In *Kroll*, the circuit court ordered Kroll not to withdraw funds from a certain bank account. *Id.* at 299. When the court learned that Kroll had withdrawn those funds, it ordered Kroll to show cause why he should not be held in contempt for disobeying the order. *Id.* Kroll petitioned the court of appeals for a supervisory writ to dismiss the order to show cause. *Id.* The court of appeals held that Wis. Stat. § 801.58(7) was inapplicable to the case and granted the requested assignment. *Id.* at 305. The court of appeals' statement that § 801.58(7) "does not apply to petitions in the nature of supervisory writs," *id.* at 304, only concerns the facts of that case where the petition for supervisory writ came before the appeal on the merits. In this case, the petition for supervisory writ came after the appeal and remand, and therefore, § 801.58(7) does apply.

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'

*In the Matters of Murchison*, 349 U.S. 133, 136 (1955)(citations omitted). The Supreme Court and this court have both recognized that to ensure fairness, not only must actual bias be absent from a case, but the appearance of bias. *State v. Holmes*, 106 Wis. 2d 31, 46, 315 N.W.2d 703 (1982). *See also State ex rel. Mitchell v. Bowman*, 54 Wis. 2d 5, 7, 194 N.W.2d 297 (1972). When a case is reversed and remanded to a circuit court, no actual bias may exist toward either party on the part of the circuit court judge who presided over the initial case. However, to avoid the appearance or threat of bias, § 801.58(7) ensures that any party may request a substitution for any reason.[13] Defining "further proceedings" to encompass any proceeding in which a judge will exercise discretion guarantees that the right of substitution may attach to the greatest number of

---

[13] A judge's potential bias after a case has been reversed and remanded was recognized in *Disqualification of Judges for Bias in the Federal Courts*, 79 Harv. L. Rev. 1435, 1452 (1966).

cases. By this definition we intend to uphold a party's right to a fair disposition of its case.

¶ 24. Moreover, the history of the unqualified right to substitution in Wisconsin supports the distinction we draw between "specific action" and "further proceedings."[14] Wisconsin has a long heritage of upholding the right to substitution. The peremptory substitution statutes, Wis. Stat. § 801.58 being but one example, were preceded by the affidavit of prejudice statutes. *Holmes*, 106 Wis. 2d at 49, 55. The first statute permitting substitution on the basis of an affidavit without proof of prejudice and without a factual determination of prejudice was enacted in 1853. *Id.* at 49. The legislative objective of the peremptory substitution statutes "is the same as that of the earlier affidavit of prejudice statutes, namely, to ensure the right to a fair trial by permitting parties to strike a judge who is

---

[14] If there is an increase in the number of substitution requests after remand, it is more appropriate for the legislature, rather than this court, to act. The legislative history of Wis. Stat. § 801.58(7) supports our position. Even though § 801.58 resulted from the exercise of shared powers of the legislature and this court, subsection (7) was actually created by an assembly amendment to 1975 Senate Bill 769, and was therefore included in 1977 Wisconsin Chapter 135. A letter by Richard Malmgren to the members of the Judicial Council states that "the 1977–78 session of the Wisconsin Legislature without any involvement by the Judicial Council adopted language allowing a party who achieved reversal of a trial court decision by an appellate court to request a substitution of a new judge for the retrial of the matter." Judicial Council Memorandum, March 8, 1979 (citing § 801.58(7)). As such, we invite the legislature, if it becomes necessary, to revise this provision, in order to restrict the right to substitute a judge on remand where "further proceedings" are required.

446

prejudiced or gives the appearance of being prejudiced." *Id.* at 55 (discussing Wis. Stat. § 971.20, the right of substitution in a criminal case).[15] The legislature's intent to create an unqualified right to substitution is represented by Wis. Stat. § 801.58(7). *Ondrasek*, 133 Wis. 2d at 184; *State ex rel. Oman*, 120 Wis. 2d at 91.

¶ 25. . Finally, our decision today comports with the traditional view that a circuit court often has some discretion on remand to resolve matters not addressed by a mandate in a manner consistent with that mandate.[16] *Fullerton*, 274 Wis. at 483. In *Fullerton*, this court specifically stated that:

> Where a mandate directs the entry of a particular judgment, it is the duty of the trial court to proceed as directed. The trial court may, however, determine any matters left open, and in the absence of specific directions, is generally vested with a legal discretion to take such action, not inconsistent with

---

[15] The right to substitution in civil cases has not been as controversial as the right in criminal cases, especially in felony actions. A number of bills have been introduced in the legislature in an attempt to curb the unqualified right to substitution in criminal cases. *See e.g.*, 1999 Assembly Bill 201 as amended by Assembly Amendment 1.

[16] The Respondent argues that *Fullerton* is inapplicable on the facts because it deals with a situation where "specific action" is mandated, but some matters are left " 'open.' " (Resp. Br. at 19)(citing *Fullerton Lumber Co. v. Torborg*, 274 Wis. 478, 483, 80 N.W.2d 461 (1957)). That scenario, the Respondent contends, is not present in this case. While we agree with the Respondent on this point, we still cite this case for the general proposition that a circuit court is often vested with some discretion on remand. *Fullerton*, 274 Wis. at 483.

> the order of the upper court, as seems wise and proper under the circumstances.

*Id.* "Specific action" is limited to purely ministerial duties to reflect this court's preference for providing a circuit court with discretion on remand.

¶ 26. We now examine the mandate at issue in this case. The Respondent contends that all five directives were for "specific action" only. (Resp. Br. at 11–15.) We disagree. The court of appeals directed the circuit court to undertake "further proceedings," as we have defined that term. The circuit court is to make factual findings and various determinations that generally involve a judge's exercise of discretion—an evaluation of the facts.

¶ 27. The first directive requires the circuit court to "make detailed factual findings and determine whether the facts support an award. . . ." *Findorff,* slip op. at 13. This directive requires the circuit court to use discretion because the court must make an evaluation. The directive does not merely order the court to enter an award of damages; the court must ascertain whether damages are necessary.

¶ 28. The second directive requires the court to "either utilize the damage figures introduced into evidence or make specific findings and conclusions as to why another damage figure is being used." Slip op. at 13. Again, this directive forces the court to make a choice, which calls for the court's exercise of discretion.

¶ 29. The third directive commands the court to "reinstate the surety, Saint Paul, and determine what damage, if any, the surety must pay." Slip op. at 13. In this directive, the court is to choose if St. Paul must pay any damages as surety. This too is clearly an evaluative process.

¶ 30. The fourth directive requires the court to "determine whether and on what legal basis Findorff's offsets and defenses should be denied." Slip op. at 13. Because the court must make a choice, discretion is similarly involved.

¶ 31. Finally, the fifth directive requires the circuit court to "determine any damage amounts without resorting to tort principles." Slip op. at 13. This too requires the exercise of discretion because the court must evaluate how to determine the damage amount, a task that is not always straightforward. We conclude that since the remand requires "further proceedings," the right of substitution attaches.

¶ 32. The second issue we address is whether a chief judge has authority to review and reverse a circuit court judge's decision to honor a request for judicial substitution. This issue similarly presents a question of statutory interpretation, which we will review *de novo*. *Cemetery Serv.*, 221 Wis. 2d at 823 (reviewing a question of statutory interpretation *de novo*).

¶ 33. The applicable statute, Wis. Stat. § 801.58(2), provides that a chief judge may only review orders denying substitution. The statute states in part:

> When the clerk receives a request for substitution, the clerk shall immediately contact the judge whose substitution has been requested for a determination of whether the request was timely made and in proper form. If the request is found to be timely and in proper form, the judge named in the request has no further jurisdiction and the clerk shall request the assignment of another judge under s. 751.03. If the judge named in the substitution request finds that the request was not timely and in proper form,

that determination may be reviewed by the chief judge of the judicial administrative district. . . .

Wis. Stat. § 801.58(2). According to the plain meaning of the statute, the only time that a chief judge may become involved in the substitution process under Wis. Stat. § 801.58(2) is if a circuit court judge denies a substitution request for not being timely or properly filed.

¶ 34. A chief judge also lacks authority under the Supreme Court Rules to review a circuit court's decision to grant a substitution request. Supreme Court Rules 70.19–70.265 set forth the duties and authority of a chief judge. Nowhere in those sections is there a provision that gives a chief judge the right to review independently and reverse a substitution request once it has been granted. Moreover, SCR 70.21(26), the rule that specifies a chief judge's responsibility and authority, expressly refers to Wis. Stat. § 801.58(2). The Supreme Court Rule's reference to this statutory provision indicates that the statute is to guide a chief judge's review of such requests. *See also State ex rel. James L.J. v. Walworth Cir. Ct.*, 200 Wis. 2d 496, 504, 546 N.W.2d 460 (1996)(stating that "[a]lthough the subject of judicial substitution affects the administration of the courts, the exercise of the statutory right to substitution in any particular case raises a question of law rather than a question of court administration.")

¶ 35. Here, Findorff's substitution request was timely and properly filed in accordance with Wis. Stat. § 801.58(1), because it was filed within twenty days of the circuit court clerk's receipt of the court of appeals' remittitur. The request required "further proceedings," and Judge Haese therefore correctly granted substitu-

tion. Since the request was granted, the chief judge lacked the authority to review and reverse it.

## III.

¶ 36. We conclude that the directives on remand in this case required "further proceedings" to which the right of substitution does attach. "Further proceedings" were required since the circuit court would necessarily have to exercise discretion to execute the directives. The directives did not call for the completion of ministerial tasks.

¶ 37. We also conclude that the chief judge was without authority to review and reverse the circuit court judge's decision to honor the substitution request. A chief judge may only review and reverse orders denying substitution. The conditions for granting a petition for supervisory writ have been met in this case. Accordingly, we reverse the court of appeals' decision and grant the petition for supervisory writ requiring substitution for the circuit court judge originally assigned.

*By the Court.*—The decision of the Court of Appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 38. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I agree with Justice Ann Walsh Bradley's concurrence and join it. The only difference in approach I have with that opinion is that I would require the court of appeals and this court to state in any decision mandating a remand whether the parties are entitled to seek substitution. I do not think that the parties should be disputing this issue on remand or

451

that the circuit court should expend resources deciding the issue of substitution. Thus I concur.

¶ 39. JON P. WILCOX, J. *(concurring).* I agree that in this case Findorff was entitled to substitution of judge under Wis. Stat. § 801.58(7) because the directions on remand required "further proceedings." I write separately because, like Justice Bradley, I am fearful that equating "specific action" with purely ministerial duties may result in more liberal substitution of judges in civil actions on remand. Wisconsin is one of only a handful of states in which a litigant may obtain peremptory substitution on remand in civil proceedings.[1] Increasing substitution of judges on remand would surely be detrimental to the efficient administration of Wisconsin circuit courts, inasmuch as nearly one half of the circuit judges sit in single judge counties. Because I would not interpret § 801.58(7) to provide such a broad right to substitution, I respectfully concur.

¶ 40. To begin with, I believe that Wis. Stat. § 801.58(7) must be read in light of the fact that it is a purely legislative enactment that directly and substantially impacts the administration of Wisconsin courts. Under the Wisconsin Constitution, such administrative matters are expressly vested in this court; our authority to supervise and administer the Wisconsin court system is not created or circumscribed by the

---

[1] The petitioner's brief notes that very few states, including Wisconsin, California, Montana, and Indiana, have statutes that permit peremptory substitution on remand in civil proceedings. Br. of Pet'r at 20–21. Many states find it unnecessary to permit substitution on remand in civil proceedings in the absence of a showing of bias or prejudice. *Id.* at 20–21 and n.5.

legislature. Wis. Const. art. VII, sec. 3; *John F. Jelke Co. v. Beck*, 208 Wis. 650, 660, 242 N.W. 576 (1932).

¶ 41. In considering the constitutionality of a legislative enactment that on its face directed this court to create the State Bar of Wisconsin, this court observed:

> Throughout the history of the state this court in dealing with matters which lie in the zone between the legislative and judicial departments, has always exercised great care to avoid any controversy with the legislature. While the power to make procedural rules is undoubtedly a judicial power, and may be exercised by the court without legislative sanction, nevertheless the court over a long period of time accepted the procedural rules made by the legislature largely because they related to substantive as well as procedural matters. . . .

*Integration of Bar Case*, 244 Wis. 8, 47, 11 N.W.2d 604 (1943). Rather than reading the statute in question as a legislative directive to the court to consolidate the state bar, this court interpreted the statute as an expression of the legislature's belief that creating a unified state bar would be good for the general welfare. *Id.* at 52–53. The court explained:

> We do not regard the enactment [of the statute] as an attempt by the legislature to invade the province of the court or to dictate to it, but as a declaration that the integration of the bar will promote the general welfare. If in thus expressing its determination the legislature has employed language which might be construed as mandatory or coercive, we do not so regard it. It is as much the duty of the legislature as it is the duty of the court to stay within its constitutional field and we shall presume that it intended to do so in this case.

¶ 42. Similarly, I believe this court should view Wis. Stat. § 801.58(7) as an expression of the legislature's determination that judicial substitution on remand for further proceedings would be good for the general welfare. In the interest of comity between co-equal branches of government, this legislative determination should be given effect to the extent it is consistent with effective and efficient administration of the courts.[2] However, this court has not only the authority but the duty to ensure that this statute does not interfere with proper administration of the courts.[3]

[2] Although I believe that this court should attempt to accommodate Wis. Stat. § 801.58(7), I wholeheartedly join the majority's invitation to the legislature to revise § 801.58(7). *See* majority opinion at ¶ 24 n.14. Indeed, I would encourage the legislature to consider repealing this provision in the interest of comity to this court. *See State v. Holmes,* 106 Wis. 2d 31, 75–76, 315 N.W.2d 703 (1982) (Coffey, J., concurring).

[3] This court considered the constitutionality of the criminal peremptory substitution statute in *Holmes,* 106 Wis. 2d 31. I am not convinced that *Holmes* adequately resolved the issue of whether the legislature's enactment of judicial substitution statutes impermissibly invades the constitutional authority of this court.

In any case, *Holmes* did not involve a statute requiring substitution after remand. Peremptory substitution after remand is even more wasteful of judicial resources than peremptory substitution before trial, because the trial judge who has already become familiar with the case is obviously best prepared to efficiently resolve the case on remand. In the case at hand, substitution will in effect result in a new trial.

Nearly identical concerns are addressed in the *Bacon-Bahr* line of cases, which hold that no right to substitution arises in proceedings to modify divorce judgments, even under Wis. Stat. § 801.58(7). *See Parrish v. Kenosha County Circuit Court,* 148 Wis. 2d 700, 703–05, 436 N.W.2d 608 (1989).

¶ 43. The record in this case demonstrates that both the circuit court and the court of appeals were striving to give effect to Wis. Stat. § 801.58(7) without creating an unqualified right to substitution of judge after remand. Chief Judge Sheedy emphasized that reassigning the case to a new judge would be tantamount to ordering a new trial. Because the court of appeals' mandate did not order a new trial but merely directed the court to perform certain specific tasks, the chief judge concluded that no right to substitution had attached. Similarly, the court of appeals reasoned that Findorff had no right to substitution because the mandate only called for reexamination of the existing record and application of proper legal standards and principles.

¶ 44. I agree with the majority that the test for deciding whether a mandate calls for "specific action" or "further proceedings" does not depend only on whether new evidence must be added to the record. Focusing on that single factor does not take into account the circuit court's great discretion to resolve matters on remand in any manner consistent with the mandate. See majority op. at ¶ 25, discussing *Fullerton Lumber Co. v. Torborg*, 274 Wis. 478, 80 N.W.2d 461 (1957). In this case, for example, although the mandate does not require that facts be added to the record, the circuit court certainly has the discretion to do so.

¶ 45. Although I agree with the majority that the mandate in this case calls for further proceedings, I agree with Justice Bradley that the definition of "specific action" need not be quite as narrow as the majority determines. Equating "specific action" with purely ministerial duties means that the right to substitution will always attach unless the mandate requires only actions that are "absolute, certain and imperative,

455

involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents,* 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976) (cited in majority opinion at ¶ 20).

¶ 46. No mandate ties the circuit court's hands in such a manner that even the "time, mode and occasion" of performance is certain. I would therefore read a bit more "wiggle room" into the language of § 801.58(7). I believe that the circuit court may exercise a limited degree of discretion in carrying out a mandate without engaging in "further proceedings."

¶ 47. I would hold that appellate courts must expressly state whether a mandate on remand should be interpreted as permitting "specific action" or "further proceedings." This practice would unequivocally inform the circuit court and the parties whether the right of substitution had attached without creating a virtually unqualified right to substitution on remand.

¶ 48. In short, I believe that as long as Wis. Stat. § 801.58(7) is in existence, this court should attempt to accommodate the legislature's determination that substitution on remand for further proceedings serves the general welfare. However, this court need not and should not recognize a right to substitution that is inconsistent with our constitutional duty to supervise and administer Wisconsin courts. For these reasons, I respectfully concur.

¶ 49. ANN WALSH BRADLEY, J. *(concurring).* The majority implicitly acknowledges that its interpretation of Wis. Stat. § 801.58(7) is unsatisfactory. It has

the potential to increase significantly the number of judicial substitutions on remand. Yet, rather than endeavoring to arrive at a reasonable interpretation, the majority throws up its collective judicial hands and instead invites the legislature to enact a new statute to correct the majority's erroneous conclusion. Because the majority misconstrues and misapplies prior cases, and precludes the circuit court from exercising even a scintilla of discretion, I respectfully concur.

¶ 50. In determining when the right to judicial substitution attaches under Wis. Stat. § 801.58(7), the majority reasons first that a circuit court's exercise of discretion on remand forms the crux of the right to substitution. Accordingly, it adopts a definition of "specific action" that is informed by the dissent in *Cuccio v. Rusilowski*, 171 Wis. 2d 648, 492 N.W.2d 345 (Ct. App. 1992), and that is tied to the concept of a ministerial duty.

¶ 51. Further amplifying specific action as the "purely ministerial," the majority transports the definition of ministerial duty from the arena of public officer immunity to the context of judicial substitution. At the end of this process, the majority concludes that the right to substitution attaches when the remand requires any exercise of discretion on the circuit court's part and declares that its construction of Wis. Stat. § 801.58(7) comports with the liberal view of substitution.

¶ 52. In its interpretation of the right to substitution under Wis. Stat. § 801.58(7), the majority misconstrues the dissent in *Rusilowski*, resulting in the improvident comparison to a public officer's ministerial duty. Referring with approval to the dissent, the majority narrowly defines "specific action" for substitution purposes as "a purely ministerial duty" that is

absolute and that leaves no room for discretion. Majority op. at ¶ 20. A closer examination reveals, however, that the dissent did not hinge its determination on whether a "specific action" for substitution purposes was the equivalent of a governmental ministerial duty.

¶ 53. The main concern expressed by the *Rusilowski* dissent centered on the majority's failure to give deference to the circuit court's exercise of discretion. 177 Wis. 2d at 654. The dissent disapproved of the majority's reversal of the substitution order because the circuit court had acted well within the bounds of its discretion in reading the court of appeals mandate expansively. *Id.* at 658. Had the circuit court denied substitution by "implicitly conceding the 'specific action' scope of the remand," the dissent made clear that it would nevertheless uphold the circuit court's discretion, although it viewed the remand as non-ministerial in nature. *Id.*

¶ 54. The dissent's bone of contention, therefore, lay with the usurpation of circuit court discretion, not with the characterization of the remand as a specific action. As the *Rusilowski* dissent states in the first paragraph, "[t]he issue before us is whether or not the trial court abused its discretion in granting the request for substitution under sec. 801.58(7)." *Id.* at 654. Thus, the majority misconstrues the focus of the *Rusilowski* dissent.

¶ 55. The majority then misapplies the definition of ministerial duty from the context of public officer immunity to the definition of specific action in the context of judicial substitution. In essence, it transplants a definition that is ill suited for its new purpose. Public officer immunity is founded upon policy considerations aimed towards "protect[ing] public officers from being unduly hampered or intimidated in the discharge of

458

their functions by threat of lawsuit or personal liability." *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682, 292 N.W.2d 816 (1980).[1] As such, liability must be limited to tasks so narrowly circumscribed that officers may perform a wide range of functions freely.

¶ 56. The narrowly drawn parameters of a public officer's liability include the discharge of duties that are "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). In the realm of judicial substitution, specific action need not be constricted in such a manner. The concerns of perceived bias addressed by substitution do not parallel the concerns of potential paralysis attendant to the performance of a wide range of public duties.

¶ 57. In restricting specific action on remand to purely ministerial duties, the majority sacrifices judicial economy and efficient judicial administration by allowing for the substitution of judges in an increasing number of remand situations. Under today's interpretation, judges who have become well-versed in the complexities of a particular case may be substituted

---

[1] These policy considerations include:

(1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; 2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; 3) the drain on valuable time caused by such actions; 4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and 5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

*Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976).

even when the remand calls for only a de minimis exercise of discretion.

¶ 58. The trial in this case spanned eight days and required extensive post-trial briefing on several intricate issues. When reviewing the substitution order granted by the trial judge, Chief Judge Sheedy declined to honor the substitution, observing that by doing so he would be "basically ordering a new trial." The majority's interpretation in essence provides litigants a renewed opportunity to get through the back door what they did not get through the front: a new trial.

¶ 59. Instructions on remand are not always of the black and white variety, but often fall into an expanse of gray. The majority's failure to allow for even a de minimis exercise of discretion upon remand foreshadows protests from courts that must grapple with, and be impeded by, the majority's unreasonable interpretation.

¶ 60. An interpretation that allows for substitution upon remand even in cases requiring only a de minimis exercise of discretion and no further involvement of the parties places an unwarranted demand on a system with limited resources. Efficient judicial administration serves not only the interests of those within the judicial system, but also serves the interests of those litigants and witnesses who use that system. Judicial economy requires a more reasonable reading of the substitution statute than the one proffered by the majority.

¶ 61. The majority implicitly acknowledges the limitations of its statutory interpretation and calls forth the legislature "to revise [Wis. Stat. § 801.58(7)], in order to restrict the right to substitute a judge on remand where 'further proceedings' are required." Majority op. at n. 14. Yet the legislature has already

done so by the very words contained in Section 801.58(7).

¶ 62. The legislature could not have intended the unreasonable construction given to the substitution statute by the majority, a construction that too narrowly restricts the scope of specific action. Under the majority's construction, substitution upon remand is allowed in every case except where the appellate court mandate so "prescribes and defines the time, mode and occasion" for the performance of a specific act "that nothing remains for judgment or discretion."

¶ 63. This highly circumscribed definition of specific action is more rigid and impractical than the definition formulated by the *Rusilowski* court or the court of appeals in the present case. Neither court foreclosed the exercise of de minimis discretion, but rather limited the discretion to the existing record. Invoking the *Rusilowski* court's definition of specific action, the court of appeals here stated: "Consequently, we conclude that the right of substitution does not attach because this court's mandate requires [that]. . .no new facts need be garnered, no added record be made; rather, the trial court is left with the same record and need not add to it." *State ex rel. J.H. Findorff & Son, Inc. v. Circuit Court for Milwaukee County*, unpublished slip op. at 5 (Ct. App. March 5, 1999).

¶ 64. The majority rejects the court of appeals' interpretation and cloaks specific action with a more narrow meaning than the one advanced even by Findorff at oral argument. A review of that argument reveals Findorff's recognition that defining specific action as the "purely ministerial" is too restrictive. The majority could have chosen to adopt Findorff's suggested interpretation of Wis. Stat. § 801.58(7), one

permitting judicial substitution only when the remand requires further involvement of the parties.

¶ 65. Perhaps the majority could have borrowed and refined the statutory construction from the context of remand in divorce proceedings that delimits substitution when a remand calls for the clarification of judgment on an existing record. *See State ex rel. Parrish v. Kenosha County Circuit Court*, 148 Wis. 2d 700, 704–05, 436 N.W.2d 608 (1989); *State ex rel. Hubert v. Winnebago County Circuit Court*, 163 Wis. 2d 517, 523, 471 N.W.2d 615 (Ct. App. 1991). The majority could have also considered a suggested interpretation of the statute that requires the court of appeals and this court to state on every remand whether the remand directs specific action or further proceedings.

¶ 66. I urge the majority to consider a reasonable interpretation of Wis. Stat. § 801.58(7) that would allow the circuit court to exercise de minimis discretion upon remand at least in some cases without triggering judicial substitution. In addition to the above proffered alternatives, I commend an interpretation of Wis. Stat. § 801.58(7) in large part borrowed from the *Rusilowski* dissent, which the majority cites with favor. 171 Wis. 2d at 656.

¶ 67. Under this suggested interpretation, the appellate mandate must unequivocally define the directed action as constituting specific action pursuant to the statute if the mandate is to be construed as requiring specific action. The appellate court may then define an action that requires only de minimis discretion as constituting specific action. In the absence of such an unequivocal declaration, that is, if any doubt remains as to the scope of the action, the circuit court has discretion to act, and the mandate allows for further proceedings under the statute.

¶ 68. Instead of considering any of the above interpretations, however, the majority settles on an unreasonable construction of Wis. Stat. § 801.58(7). Its reading allows for substitution upon remand in all cases involving only de minimis discretion.

¶ 69. In sum, the majority misconstrues the dissent in *Rusilowski* and misapplies a definition of ministerial duty borrowed from the context of public officer immunity. Additionally, it errs by advancing a bright-line interpretation for facile application that undermines efficient judicial administration. Accordingly, I concur.

¶ 70. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this concurrence.