IN RE the COMMITMENT OF Lenny P. KEDING:

STATE of Wisconsin, Plaintiff-Respondent,

v.

Lenny P. KEDING, Defendant-Appellant.

Supreme Court

*No. 00–1700. Oral argument May 29, 2002.—Decided July 3, 2002.*

2002 WI 86

(Also reported in 646 N.W.2d 375.)

For the defendant-appellant there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein,* with whom on the brief was *James E. Doyle,* attorney general.

¶ 1.   DIANE S. SYKES, J.   This case is before the court on certification from the court of appeals pursu-

ant to Wis. Stat. § 809.61 (1999–2000) on the question of whether a circuit court is required to consider alternatives to revocation before revoking a sexually violent person's supervised release under Chapter 980.

¶ 2.  The court is evenly split on the answer to this question. Chief Justice Abrahamson and Justices Bablitch and Bradley would say yes; Justices Wilcox, Crooks, and the author of this opinion would say no. Justice Prosser did not participate.

¶ 3.  Despite the tie vote on the legal issue, we nevertheless affirm the circuit court's order revoking Lenny Keding's supervised release under Wis. Stat. § 980.08(6m) (1999–2000),[1] because four members of the court—Justices Bablitch, Wilcox, Crooks, and the author of this opinion—agree that the circuit court in this case did in fact inquire about whether there were any alternatives to revocation before revoking Keding's supervised release, and was advised that there were none.

I

¶ 4.  Lenny Keding was convicted in 1993 of second-degree sexual assault of a child. A sentence of four years in prison was imposed and stayed in favor of probation. In 1994, Keding's probation was revoked and he was sent to prison. As he neared the end of his prison term, the State initiated Chapter 980 proceedings against him. Keding's case was tried to a jury, and he was ultimately determined to be a sexually violent person as defined by Wis. Stat. § 980.01(7).[2] The Wood County Circuit Court, the Honorable James M. Mason,

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

[2] Wisconsin Statute § 980.01(7) provides:

considered Keding an appropriate candidate for supervised release, but because no facility was available in Wood County, Keding was committed to the Wisconsin Resource Center (WRC).

¶ 5. Keding appealed the circuit court's order to the extent that it placed him in institutional treatment rather than on supervised release. The court of appeals reversed and remanded, holding that the circuit court had erroneously exercised its discretion by limiting its consideration of potential supervised release facilities to those in Wood County. *See State v. Keding*, 214 Wis. 2d 363, 571 N.W.2d 450 (Ct. App. 1997). On remand, however, the circuit court, based on reports regarding Keding's behavior at WRC, concluded that Keding was no longer an appropriate candidate for supervised release. Keding remained in institutional treatment at WRC.

¶ 6. Keding again appealed, and the court of appeals remanded for an evidentiary hearing on the issue of ineffective assistance of counsel. The parties subsequently entered into a stipulation to the effect that Keding would agree to forego his post-conviction claims and the State would agree that Keding was an appropriate candidate for supervised release. Based on the stipulation, and after some initial difficulty locating a suitable community placement for Keding, the circuit

---

"Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness and, who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

court ordered supervised release, and on January, 20, 2000, Keding was released from WRC to a duplex in Wisconsin Rapids.

¶ 7. On the day of his release, Keding reported to his supervising agent. The agent searched his belongings and found a photo album stuffed with pictures of young boys from magazines and newspapers. During the first few weeks of his supervised release, Keding met with his psychotherapist a number of times, and reported that he was fantasizing about young boys and masturbating to the fantasies. His medication was increased and Keding later reported to his psychotherapist and agent that he was no longer having such fantasies.

¶ 8. On March 13, 2000, the Department of Health and Family Services (DHFS) petitioned the court for revocation of Keding's supervised release pursuant to Wis. Stat. § 980.08(6m). The petition alleged that Keding had violated the terms of release by contacting residents at WRC, including one with whom he had had a sexual relationship; possession of sexually explicit letters; purchasing items on a credit card while prohibited from doing so; and lying to his agent.

¶ 9. Keding admitted to three of the violations: writing letters to WRC residents, possessing sexually explicit letters, and lying to his agent. He argued, however, that the violations were not significant enough to warrant revocation of supervised release. At the revocation hearing, Keding's psychotherapist testified that in his opinion, Keding was "slipping" and was "a high risk to re-offend." After hearing argument from counsel, the circuit court inquired: "Is there an alternative to returning him to the Resource Center which the State considers appropriate or is [revocation] the only option which is available?" Keding's supervising agent replied that she had discussed the matter with a repre-

sentative of DHFS and concluded that there were no community alternatives to revocation.

¶ 10. The circuit court ordered Keding's supervised release revoked, concluding that Keding had violated the terms of his supervised release by contacting residents at WRC, making unauthorized credit purchases, and lying to his agent, and that these violations were serious enough to warrant revocation. The circuit court held that "Lenny Keding has established himself as too great a risk to re-offend to be continued in supervised release. On the basis of his performance and attitude since supervised release was ordered, it's doubtful that Lenny Keding will comply with the rules of supervised release in the near future. He presents a danger to others."

¶ 11. Keding appealed, arguing that the circuit court was required to consider alternatives to revocation before making a decision to revoke supervised release under Wis. Stat. § 980.08(6m). The court of appeals certified the case to us for determination of the following question: "[W]hether the circuit court is required to consider alternatives to revocation when a proceeding is brought to revoke the supervised release of a person committed under Wis. Stat. ch. 980, the sexual predator statute." We accepted the certification.

II

¶ 12. Keding argues that Wis. Stat. § 980.08(6m), either alone or read together with Wis. Stat. § 51.61(1)(e), requires a circuit court to consider alternatives to revocation before revoking a sexually violent person's supervised release. Alternatively, he argues that consideration of alternatives to revocation is required by due process. Finally, he argues that the record does not support the circuit court's decision to revoke his supervised release.

¶ 13. Whether a circuit court is required to consider alternatives to revocation before revoking supervised release under Wis. Stat. § 980.08(6m) is a question of law subject to independent review (in any event, neither lower court decided the question); the revocation decision itself is a discretionary one, subject to a deferential standard of review. We will uphold a circuit court's exercise of discretion if the court employs a process of reasoning based on the facts of record and reaches "a conclusion based on a logical rationale founded upon proper legal standards." *State ex rel. J.H. Findorff v. Milw. Cty.,* 2000 WI 30, ¶ 21, 233 Wis. 2d 428, 608 N.W.2d 679 (quoting *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971)).

¶ 14. Wisconsin Statute § 980.08(6m) provides, in pertinent part:

> An order for supervised release places the person in the custody and control of the department. *The department shall arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the plan for supervised release approved by the court under sub. (5).* A person on supervised release is subject to the conditions set by the court and to the rules of the department. . . . If the department alleges that a released person has violated any condition or rule, or that the safety of others requires that supervised release be revoked, he or she may be taken into custody under the rules of the department. The department shall submit a statement showing probable cause of the detention and a petition to revoke the order for supervised release to the committing court . . . . The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked. *If the court determines after hearing that any*

*rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked, it may revoke the order for supervised release and order that the released person be placed in an appropriate institution* until the person is discharged from the commitment under s. 980.09 or until again placed on supervised release under this section.

Wis. Stat. § 908.08(6m) (emphasis added).

¶ 15. The "patient's rights" statute, Wis. Stat. § 51.61, is applicable to sexually violent persons committed under Ch. 980, *see* Wis. Stat. § 51.61(1), and provides that persons committed for treatment "have the right to the least restrictive conditions necessary to achieve the purposes" of commitment. Wis. Stat. § 51.61(1)(e). Keding argues that Wis. Stat. § 980.08(6m), on its own or read in conjunction with the patient's rights statute, requires consideration of alternatives to revocation before supervised release can be revoked.

¶ 16. Keding relies primarily on *State ex rel. Plotkin v. DHSS,* 63 Wis. 2d 535, 217 N.W.2d 641 (1974), and *Van Ermen v. DHSS,* 84 Wis. 2d 57, 267 N.W.2d 17 (1978). *Plotkin* held that alternatives to revocation must be considered before revocation of probation could occur; *Van Ermen* imposed the same requirement on parole revocations. *Plotkin,* 63 Wis. 2d at 544–45; *Van Ermen,* 84 Wis. 2d at 68. Keding also argues that to avoid a violation of due process, Wis. Stat. § 980.08(6m) must be construed to require consideration of alternatives prior to revocation of supervised release.

¶ 17. In opposition, the State relies on *State v. Jefferson,* 163 Wis. 2d 332, 340, 471 N.W.2d 274 (Ct. App. 1991), which held that the circuit court was not required to consider alternatives to revocation before revoking the conditional release of a person committed for treatment following a finding of not guilty by reason

341

of mental disease or defect. The State also cites *Black v. Romano,* 471 U.S. 606, 611 (1985), in which the United States Supreme Court declined to impose an affirmative due process requirement that alternatives to revocation be considered before probation or parole could be revoked.

¶ 18.   As noted above, the court is evenly split on the issue of whether a circuit court is required—statutorily, constitutionally, or as a matter of policy as in *Plotkin* and *Van Ermen*—to consider alternatives to revocation prior to revoking a sexually violent person's supervised release under Wis. Stat. § 980.08(6m). Accordingly, we do not resolve the certified question. We nevertheless affirm the circuit court's order revoking Keding's supervised release, because the record reflects that the court inquired about alternatives to revocation, and was advised that there were none.

¶ 19.   We also reject Keding's contention that the record does not support the decision to revoke. Keding argues that the rules violations were too minor to justify revocation. We do not reverse a discretionary judgment of the circuit court where, as here, the record reflects a process of reasoning based upon facts of record and a proper standard of law. *Findorff,* 2000 WI 428, ¶ 21.

¶ 20.   The circuit court based its decision to revoke on the three rules violations that were substantiated and the testimony of Keding's psychotherapist that Keding was a "high risk to re-offend." Although the court is divided on the question of whether the circuit court was required to consider alternatives to revocation, such consideration is certainly permissible in the circuit court's exercise of its discretion. Here, the circuit

court inquired about available alternatives, and was advised that there were none.

¶ 21. While reasonable minds might differ on the issue of whether these particular rules violations were sufficiently serious to warrant revocation, we perceive no erroneous exercise of discretion. The circuit court was entitled to rely upon the psychotherapist's opinion that Keding was "slipping" and "at risk to re-offend," considered together with the rules violations, in concluding that Keding was too great a danger to maintain on supervised release. Accordingly, we affirm the circuit court's order revoking Keding's supervised release pursuant to Wis. Stat. § 980.08(6m).

*By the Court.*—The order of the Wood County Circuit Court is affirmed.

¶ 22. ANN WALSH BRADLEY, J. *(dissenting).* In affirming the circuit court's order revoking Lenny Keding's supervised release, the majority concludes that the court considered whether there were any alternatives to revocation. I conclude that the circuit court's inquiry here was meaningless because no alternatives exist.

¶ 23. The majority states: "the record reflects that the court inquired about alternatives to revocation, and was advised that there were none." Majority op. at ¶ 18. Here is what the record reflects. First, the circuit court inquired as follows:

> THE COURT: Is there an alternative to returning him to the Resource Center which the State considers appropriate or is that the only option which is available?

The State began to respond, but then deferred to Keding's probation agent. She explained as follows:

> I had talked to Matt Kaesermann from the Depart-

ment of Health & Family Services because he and I actually batted around the idea of—because we figured that it would come up at the hearing.

We both agree—he has no knowledge of any place that would be—that would be an alternative, because if it was a regular revocation, we could look at minimum security camps and things like that. Since this is not a revocation of the probation, he said that there really isn't any place. And since there were so many difficulties trying to get him placed in an appropriate residence, he said that, you know, he has no knowledge of anything—any living situation that would be an appropriate alternative.

¶ 24. The reason that "there were none" is because the State has failed to provide for necessary alternatives. No one in the community is willing to take a Wis. Stat. ch. 980 respondent. *See State v. Sprosty,* 227 Wis. 2d 316, 322, 595 N.W.2d 692 (1999); *State v. Krueger,* 2001 WI App 76, ¶ 2, 242 Wis. 2d 793, 626 N.W.2d 83; *State v. Castillo,* 205 Wis. 2d 599, 556 N.W.2d 425 (Ct. App. 1996); *see also State v. Rachel,* 2002 WI 81, ¶ 76, 254 Wis. 2d 215, 647 N.W.2d 762 (Bradley, J. dissenting).

¶ 25. Keding was on both ch. 980 supervised release status and probation status. It is clear from the record that had his probation status been revoked, an alternative would have been available: "minimum security camps and things like that." However, the court was unable to consider alternatives to revocation of ch. 980 supervised release because none existed.

¶ 26. Just as there were no alternatives available at the time of Keding's revocation, there were no alternatives available when he first became eligible for supervised release. At that time, a community placement was attempted in Wood County, but no suitable housing could be found. Next, another placement was

attempted in a group home in Richland County, but the group home decided against it because of concern about the community's reaction. Yet another placement was attempted, this time in a group home in Jefferson County, but the group home ultimately rejected Keding because of friction with the county sheriff. Still other placements also failed.[1]

¶ 27. Ultimately, and despite the fact that the record shows that Keding has an IQ of 72, the placement provided for his supervised release was an empty duplex in which he lived alone, subject to electronic monitoring. Even that placement was proving to be unacceptable at the time that he became subject to revocation.[2]

¶ 28. It is hardly surprising, given the nature of Keding's placement, that he committed some minor violations of the rules attached to his supervised release. As a result, he was confined indefinitely to the Wisconsin Resource Center.

¶ 29. To my mind, the question this case raises is why did this ch. 980 respondent, who the circuit court deemed a proper candidate for supervised release, ultimately end up back in a secure facility? The answer is not because he broke some rules. The answer is because

---

[1] Upon questioning at oral argument, the State acknowledged the unavailability of the placements in Wood, Richland, and Jefferson Counties, then added: "You forgot La Crosse and Dane Counties."

[2] When the landlord at the duplex informed the State that someone was about to move into the other unit in the duplex, the staff of the agency with which the State contracted to provide monitoring did not think the duplex placement would continue to be a good idea.

the State failed to devote the necessary resources to provide a viable alternative in order to properly effectuate supervised release.

¶ 30. The constitutionality of ch. 980 hinges in part upon its provisions for supervised release. I conclude that these provisions require a circuit court to consider alternatives to revocation before revoking supervised release under ch. 980. Just as the State failed to provide a viable community placement at the time of Keding's supervised release, it failed to provide any viable alternative to revocation.

¶ 31. If, as here, the State fails to ensure that viable alternatives exist, then the necessary inquiry into alternatives to revocation is fanciful, and so is the constitutionality of ch. 980 as applied to Keding. Accordingly, I respectfully dissent.

¶ 32. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON, joins this opinion.