In re the Commitment of Ervin Burris:

State of Wisconsin, Petitioner-Respondent,

v.

Ervin Burris, Respondent-Appellant.†

Court of Appeals

*No. 00–1425. Submitted on briefs October 5, 2001.—Decided October 10, 2002.*

2002 WI App 262

(Also reported in 654 N.W.2d 866.)

† Petition to review granted 1-14-03.

454

On behalf of the respondent-appellant, the cause was submitted on the brief of *Joseph L. Sommers*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Ervin Burris, presently committed under Wis. Stat. ch. 980 (1999–2000),[1] appeals an order revoking his supervised release to the community and committing him to the Wisconsin Resource Center. The order followed an evidentiary hearing on allegations that Burris violated his rules of supervised release. On appeal, Burris contends that (1) one of the rules of his supervised release is unconstitutionally vague; (2) the petition provided insufficient notice of the allegations against him; and (3) the circuit court did not adequately consider alternatives to revoking his supervised release. Each of these errors or omissions was, in Burris's view, a due process violation. We affirm.

## *Background*

¶ 2. In 1997, Burris was committed as a sexually violent person. He was subsequently released on supervision to the Rock Valley Community Corrections Program (halfway house) in Janesville. The Department of Health and Family Services imposed numerous rules on Burris, including the following:

1. You shall avoid all conduct that is a violation of federal or state statute, municipal or county ordinances or that is not in the best interest of the public's welfare or your rehabilitation.

---

[1] All further references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

. . . .

4. You shall inform your agent of your whereabouts and activities as she/he directs.

. . . .

13. You shall provide true and correct information orally and in writing in response to inquiries by the agent.

. . . .

15. . . . The specific rules imposed at this time are:

 a) You shall not consume or possess alcohol, illegal drugs or drug paraphernalia.

. . . .

18. You shall notify your agent of any involvement in an intimate relationship at its beginning and you shall introduce the person to your agent to disclose your past sexual offenses prior to engaging in any type of sexual activity with that person.

In mid-December 1999, the department petitioned to revoke Burris's supervised release, alleging that Burris obtained a Viagra prescription without his supervising agent's knowledge or consent (an alleged violation of Rule 1), that Burris refused to sign a release form allowing the department to interview the prescribing physician (an alleged violation of Rule 1), that Burris refused to provide his supervising agent with a written statement about the events leading to Burris obtaining the Viagra prescription (an alleged violation of Rules 1, 4, and 13), and that Burris involved himself in an intimate relationship without informing his supervis-

ing agent (an alleged violation of Rules 1, 4, and 18). An amended petition, filed on December 30, 1999, added the allegation that Burris consumed alcohol and shared it with another resident at the halfway house between November 3 and November 24, 1999 (an alleged violation of Rules 1 and 15a).

¶ 3. An evidentiary hearing on the revocation petition was held on January 8, 2000. After finding that Burris violated the rules of his release as well as several uncharged minor halfway house rules, the circuit court revoked Burris's supervised release and concluded that the protection of the public required Burris's indefinite commitment to the Wisconsin Resource Center. The circuit court's decision from the bench included the following comments:

> I conclude that this compulsive behavior which makes him unable to control his own action coupled with the fact that he has this history of violent sexual activity and sex with children creates a high likelihood that his compulsive behavior will manifest itself in sexually violent behavior which is harmful to the public in the future if there are not significant more controls imposed upon him. And I do not think that the public can be protected in his present placement because of his, number one, refusal to obey the directives of his agent; number two, his refusal to be candid in sex offender treatment; number three, his refusal to follow the rules during temporary releases which were designed to transition him into the community; and, number four, his refusal to be candid with his agent particularly involving matters of his sex life.
>
> . . . I believe that the safety of the public requires his commitment to a secure facility, and I am going to order that the prior order of this Court is modified to provide that he is committed to the Wisconsin Resource

461

Center for commitment and treatment until such time as it's safe to release him into the public.

### *Discussion*

### *A. Whether One of the Rules of Supervised Release is Unconstitutionally Vague*

¶ 4. Rule 1 of Burris's supervised release states, in relevant part: "You shall avoid all conduct . . . that is not in the best interest of the public's welfare or your rehabilitation." Burris allegedly violated this rule by obtaining a Viagra prescription without informing his agent. Burris argues that Rule 1 is unconstitutionally vague because it failed to give him notice that obtaining a prescription for Viagra was prohibited conduct. We disagree.

¶ 5. "The concept of vagueness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *State v. Courtney*, 74 Wis. 2d 705, 709, 247 N.W.2d 714 (1976) (footnote omitted). We must determine whether the rule " 'read as a whole [is] so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited.' " *Id*. at 710 (quoting *State v. Woodington*, 31 Wis. 2d 151, 181, 142 N.W.2d 810 (1966)). This court will not hear a vagueness challenge from one whose conduct is clearly within the prohibited zone. *See Courtney*, 74 Wis. 2d at 713 ("Where . . . conduct is clearly within the prohibited zone, the defendant will not be heard to hypothesize other factual situations which might raise a question as to the applicability of the statute or regulation.").

¶ 6. We acknowledge that the language of Rule 1 is broad, but Burris's challenge fails because his behavior so plainly falls within the language of the rule. Burris had a history of thirty serious sex offenses, including first-degree sexual assault of a nine-year-old child. Burris was found to be a sexually violent person under WIS. STAT. ch. 980. We conclude that an ordinary person would have been cognizant that obtaining a prescription for a sexual-performance-enhancing drug would not be in the public's or in Burris's best interest.

## B. *Whether Burris was Afforded Notice of Allegations Sufficient to Satisfy Due Process*

¶ 7. Burris asserts he did not receive adequate notice of the allegations against him in violation of his due process rights. Specifically, he contends: (1) he received insufficient information regarding the allegation in the petition that he had intimate relations with a woman; (2) he was given untimely and insufficiently specific notice of the allegation that he consumed alcohol; and (3) he was required to defend himself against alleged violations of the halfway house rules when such allegations were not contained in the petition for revocation. We shall address each in turn.

### *1. Intimate Relations Allegation*

¶ 8. Burris argues that the revocation petition failed to provide him with adequate notice because it did not include the name of the woman with whom he allegedly had intimate relations. The proper inquiry with any notice challenge is whether "the notice requirement is such that is 'reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections.' " *State ex rel. Messner v. Milwaukee County Civil Serv. Comm'n*, 56 Wis. 2d 438, 444, 202 N.W.2d 13 (1972) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In the absence of formal notice, actual notice generally satisfies due process requirements. *See, e.g., State v. Flakes*, 140 Wis. 2d 411, 421–22, 410 N.W.2d 614 (Ct. App. 1987).

¶ 9. Burris received actual notice. It is undisputed that Burris's attorney discovered the woman's name prior to the revocation hearing either from Burris's supervising agent or from the woman herself. Burris does not argue that actual notice deprived him of due process. Moreover, even assuming that the lack of formal notice violated due process, Burris has not alleged resulting prejudice. Prior to the hearing, Burris's attorney interviewed the woman Burris was alleged to be involved with.

██

¶ 10. We conclude the omission of the woman's name in the petition did not violate due process.

### 2. Alcohol Use Allegation

¶ 11. Burris next argues that he did not receive timely notice of the allegation that he used alcohol while at the halfway house. Burris states that the alcohol allegation was added "in the eleventh hour," and complains that the allegation refers to a three-week period, making it "impossible for anyone to defend himself against" the allegation.

██

¶ 12. The notice standard we apply in this context is not disputed. "Notice to comply with due process requirements must be given sufficiently in advance of

scheduled court proceedings so that a defendant will have a reasonable opportunity to prepare." *State v. VanBronkhorst*, 2001 WI App 190, ¶ 15, 247 Wis. 2d 247, 633 N.W.2d 236.

■

¶ 13. Burris received notice of the amended allegation nine days before the hearing. Apart from the "eleventh hour" assertion, Burris does not argue why nine days' notice was insufficient for him to prepare an adequate defense. For example, he does not point to anything he would have done differently to prepare if only he had been given more time. Regarding the three-week window in which the State alleged the alcohol violations occurred, Burris similarly makes a general assertion that the long window prevented him from mounting a defense, but fails to specify how he was prevented from mounting an adequate defense. We conclude Burris suffered no due process violation as a result of the amendment to the revocation petition nine days prior to the hearing.

### 3. *Halfway House Rules Violations*

¶ 14. Burris argues that he was forced to defend against alleged violations of the halfway house rules that were not alleged in the petition. Burris contends that the circuit court's reliance on these violations denied him due process. However, the State did not rely on the halfway house rules violations as evidence that Burris violated the terms of his supervised release. The halfway house rules violations were introduced only insofar as they related to the allegations contained in the petition. For example, the State presented evidence that Burris went to a motel to have sex when he was supposed to be on a pass at his mother's house. In

addition, the State presented evidence that Burris had been found in the parking lot of the halfway house, in violation of the house rules, in order to support the inference that halfway house staff could not always monitor whether Burris had been drinking or been having unauthorized intimate relations.

¶ 15. Even if we were to determine that Burris should have received notice of alleged halfway house rules violations, any error in this regard would be harmless.

¶ 16. Lack-of-notice violations in WIS. STAT. ch. 980 revocation proceedings are subject to harmless error analysis. *See VanBronkhorst*, 2001 WI App 190 at ¶ 19. Recently, in *State v. Harvey*, 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189, the supreme court adopted the formulation of the harmless error test used by the United States Supreme Court: "error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Id.* at ¶ 49 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). There is nothing in *Harvey* to suggest that this language constitutes a substantive change in Wisconsin's harmless error test. The court's prior articulation of the test was frequently summarized as follows: "whether there is a reasonable possibility that the error contributed to the conviction. A reasonable possibility is a possibility sufficient to undermine our confidence in the conviction." *State v. Williams*, 2002 WI 58, ¶ 50, 253 Wis. 2d 99, 644 N.W.2d 919 (citations omitted). When determining whether error is harmless, the reviewing court considers the entire record. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556–57, 500 N.W.2d 289 (1993).

¶ 17. Burris does not explain how the circuit court's consideration of minor halfway house rules violations contributed to the revocation decision. Apart from finding that Burris violated halfway house rules, the circuit court found that: Burris obtained a prescription that Burris believed was prohibited; Burris had contact with a woman in violation of his supervising agent's order; Burris had sexual intercourse with the woman in violation of his rules of release; Burris drank alcohol in violation of the terms of his supervised release; Burris did not participate in sex offender treatment while on supervised release; and Burris failed to cooperate with his supervising agent. In addition, the court concluded:

> And I do not think that the public can be protected in his present placement because of his, number one, refusal to obey the directives of his agent; number two, his refusal to be candid in sex offender treatment; number three, his refusal to follow the rules during temporary releases which were designed to transition him into the community; and, number four, his refusal to be candid with his agent particularly involving matters of his sex life.

The circuit court did not expressly rely on the halfway house rules violations in reaching its decision and we see no reason why those violations would have affected the court's decision. Our confidence in the outcome of the revocation hearing is not undermined.

## C. Whether the Circuit Court was Required to Consider Alternatives Other than Revocation

¶ 18. Burris argues that the circuit court was required to consider alternatives to secure detention and reject those alternatives before revoking his super-

vised release and returning him to an institution. Burris contends that the requirements contained in *State ex rel. Plotkin v. DHSS*, 63 Wis. 2d 535, 217 N.W.2d 641 (1974), should apply to a revocation hearing under WIS. STAT. § 980.06(2)(d).[2]

---

[2] WISCONSIN STAT. § 980.06(2)(d) reads:

An order for supervised release places the person in the custody and control of the department. A person on supervised release is subject to the conditions set by the court and to the rules of the department. Before a person is placed on supervised release by the court under this section, the court shall so notify the municipal police department and county sheriff for the municipality and county in which the person will be residing. The notification requirement under this paragraph does not apply if a municipal police department or county sheriff submits to the court a written statement waiving the right to be notified. If the department alleges that a released person has violated any condition or rule, or that the safety of others requires that supervised release be revoked, he or she may be taken into custody under the rules of the department. The department shall submit a statement showing probable cause of the detention and a petition to revoke the order for supervised release to the committing court and the regional office of the state public defender responsible for handling cases in the county where the committing court is located within 48 hours after the detention. The court shall hear the petition within 30 days, unless the hearing or time deadline is waived by the detained person. Pending the revocation hearing, the department may detain the person in a jail or in a hospital, center or facility specified by s. 51.15(2). The state has the burden of proving by clear and convincing evidence that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked. If the court determines after hearing that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked, it may revoke the order for supervised release and order that the released person be placed in an appropriate institution until the person is discharged from the commitment under s. 980.09 or until again placed on supervised release under s. 980.08.

¶ 19. The parties assert that the question presented is the same one we certified to the supreme court in *State v. Keding*, 2002 WI 86, ¶ 1, 254 Wis. 2d 334, 646 N.W.2d 375, which the supreme court did not answer because it was evenly divided on the question. However, the question before us is narrower than the one we certified in *Keding*. In *Keding*, we asked the supreme court to answer the following question: Is "a circuit court . . . required to consider alternatives to revocation before revoking a sexually violent person's supervised release under Chapter 980"? *Id.* Here, we need not address whether a circuit court is *ever* required to consider alternatives to revocation. Rather, we need only address whether the court must consider alternatives after finding that revocation is required for the safety of others.

¶ 20. "Whether a circuit court is required to consider alternatives to revocation before revoking supervised release . . . is a question of law subject to independent review . . . ." *Id.* at ¶ 13. At the same time,

> the revocation decision itself is a discretionary one, subject to a deferential standard of review. We will uphold a circuit court's exercise of discretion if the court employs a process of reasoning based on the facts of record and reaches "a conclusion based on a logical rationale founded upon proper legal standards."

*Id.* (quoting *State ex rel. J.H. Findorff & Son, Inc. v. Milwaukee County Circuit Court*, 2000 WI 30, ¶ 21, 233 Wis. 2d 428, 608 N.W.2d 679).

---

Section 980.06(2)(d) was subsequently renumbered Wis. Stat. § 980.08(6m) and amended by 1999 Wis. Act 9, § 3223L. The amendment did not alter the relevant language at issue here.

¶ 21. We must construe WIS. STAT. § 980.06(2)(d) to determine whether the circuit court was required to consider alternatives to revocation in this case. The construction of a statute is a question of law which we review without deference to the trial court. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985). We first look to the language of the statute and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). Only when statutory language is ambiguous may we examine other construction aids, such as legislative history, context and subject matter. *State v. Waalen*, 130 Wis. 2d 18, 24, 386 N.W.2d 47 (1986). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Williquette*, 129 Wis. 2d at 248.

¶ 22. The applicable subsection of WIS. STAT. ch. 980 reads, in pertinent part:

> If the court determines after hearing that any rule or condition of release has been violated, or that the safety of others requires that supervised release be revoked, it may revoke the order for supervised release and order that the released person be placed in an appropriate institution until the person is discharged from the commitment under s. 980.09 or until again placed on supervised release under s. 980.08.

WIS. STAT. § 980.06(2)(d). Under this statute, a circuit court must first determine whether any rule or condition of release has been violated or whether the safety of others requires revocation. If either of these conditions is met, the circuit court "may" revoke an order for supervised release. However, upon a finding that the safety of others requires revocation, the plain language of the statute removes any discretion from the circuit

court. Simply stated, it is irrational to require consideration of alternatives to revocation after a court has found that the safety of others requires revocation. Moreover, a review of the record here reveals that the circuit court found that the safety of others required Burris's revocation.

¶ 23. The circuit court, in its findings, stated:

I believe that *the safety of the public requires his commitment to a secure facility,* and I am going to order that the prior order of this Court is modified to provide that he is committed to the Wisconsin Resource Center for commitment and treatment until such time as it's safe to release him into the public.

(Emphasis supplied.) The circuit court explained that Burris's compulsive behavior, as evidenced by the rules violations, and his history of sexually violent behavior made him an unacceptable risk. Although the circuit court did not use the statutory language ("safety of others requires that supervised release be revoked"), it is obvious that this was the court's finding.

¶ 24. Burris's argument that the circuit court was required to consider alternatives to revocation is based on *Plotkin*, 63 Wis. 2d 535. *Plotkin* approved and adopted standards, recommended by the American Bar Association, used during administrative proceedings regarding probation revocations. *Id.* at 544. Burris argues that these standards should be applied to WIS. STAT. ch. 980 supervised release revocations because persons committed under ch. 980 are entitled to the same constitutional protections that criminal defendants receive when contesting probation revocations. Burris relies on the following language from *Van-Bronkhorst*, 2001 WI App 190 at ¶ 9: "procedural due process protections afforded in probation or parole

revocation proceedings apply to supervised release revocation proceedings under ch. 980."

¶ 25. However, *Plotkin* was decided based on a statute giving the circuit court the discretion to revoke probation. *See Plotkin*, 63 Wis. 2d at 542. As explained above, the circuit court has no such discretion when it finds that the safety of the public requires that supervised release be revoked. *See* WIS. STAT. § 980.06(2)(d).

*By the Court.*—Order affirmed.