COURT OF APPEALS
DECISION
DATED AND FILED

March 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP816-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2006CF682

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

V.

JAMES E. SHIELDS,

　　DEFENDANT-APPELLANT.

　　　　　APPEAL from an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed*.

　　　　　Before Gundrum, P.J., Grogan and Lazar, JJ.

　　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. James E. Shields appeals an order denying his petition for conditional release. He argues the circuit court erred by excluding evidence at his conditional release hearing and by failing to properly assign the State the burden of proof at the hearing. We disagree and affirm.

## BACKGROUND

¶2 In 2006, the State charged Shields with first-degree intentional homicide for killing his neighbor by stabbing him multiple times. Ultimately, Shields pled guilty, but not guilty by mental disease/defect, to the charge. The circuit court committed Shields to the Department of Health Services for life. Shields has filed many petitions for conditional release, beginning in 2008. This case involves his most recent petition, which he filed in July 2022.

¶3 After Shields filed his petition, the circuit court appointed Dr. Kevin Miller, a licensed psychologist, to examine Shields. This was the fifth time that Miller had evaluated Shields for conditional release. Miller filed his report in August 2022 and concluded that Shields did not meet the criteria for conditional release because he posed "a significant risk of bodily harm to himself or others."

¶4 The circuit court held an evidentiary hearing on Shield's petition, where Miller and Shields testified. Miller testified Shields "continu[es] to be a significant risk of harm to others and to himself." Miller explained that Shields' primary issue was "self-neglect." Shields had multiple health issues for which he was currently being treated—he had suffered a stroke, and had schizophrenia, diabetes, kidney disease, and prostate cancer. Miller testified that Shields had no awareness that he had these medical conditions and did not have an understanding or an ability to manage them. If Shields was released, Miller believed that Shields would not continue the treatment for his various medical conditions due to his lack

2

of awareness. Shields told Miller that he did not believe he had any medical issues that required treatment.

¶5 Miller also opined that Shields was a substantial risk of harm to others. He explained that Shields killed his neighbor but that Shields no longer believed that he killed his neighbor. Shields simply referenced a "disagreement with a neighbor," which Miller stated showed a "tremendous loss of memory and insight." Miller believed Shields may have damaged "parts of the brain that deal with decision making and judgment." He explained that "patients with serious brain damage … are ... generally a high risk for aggression because they forget what's going on and accuse people of lying to them or trying to cause them harm." Also contributing to Miller's conclusion that Shields posed a significant risk of harm to others was a remark Shields made during his previous examination for conditional release in October 2021. At that time, Shields was still able to talk about his criminal case and told Miller that if he was in the community, he had the right to kill people who were "messing or meddling with him."

¶6 Miller also testified that Shields did not have any awareness as to how he would live or support himself if released in the community. Miller explained:

> [Shields] stated that he would get a job and didn't consider it to be a problem, this finding of not guilty by reason of mental disease or defect for a homicide, you know, being 70 years of age, diabetic, having cancer, having had a st[r]oke. He doesn't believe he has any residual effect from any of his medical problems. He has talked about just getting a job. Otherwise he would just answer I don't know. So, he couldn't tell me the difference between probation versus conditional release. And, again, he doesn't understand why he's in a psychiatric hospital. He thinks it's because he (unintelligible) to prison basically and that he might just do good time in order to be released from

prison. And then he thinks if he goes out in the community, he would just be on his own.

¶7 During cross-examination, defense counsel asked Miller to elaborate on a statement in Miller's report that Miller was concerned about Shields' competency and, unless competency improved, the parties should consider beginning guardianship/protective placement proceedings. Counsel asked, "Doctor, you noted that you believe that we should start considering Chapter 54/55 guardianship proceedings; is that correct?" The State objected, arguing, "[w]hether or not different options should be considered for Mr. Shields isn't really relevant for whether or not the Court should grant his petition for conditional release." The court sustained the objection.

¶8 Miller testified that if the court granted Shields' petition, there would be a conditional release plan proposed, which would need to be approved by the court. The plan would address where Shields would live and the provision for his care. Defense counsel asked Miller if Shields would still present a risk of harm to himself if under a guardianship and protective placement, and he answered, "Yes." The State objected "as it relates to whether or not a guardianship is appropriate." The court sustained the objection.

¶9 Shields also testified. He testified that, "I wouldn't hurt myself or nobody else. And I'm willing to have a guardian."

¶10 In closing statements, the State argued that it had proven by clear and convincing evidence that Shields would be a significant risk of harm to himself and others. The State emphasized Miller's testimony that Shields did not have any internal understanding of his medical needs and would not follow through with treatment and medication if released in the community. The State

argued that "in terms of clear and convincing evidence, that Dr. Miller's testimony satisfies the State's burden and the State would ask the Court to deny the petition for conditional release."

¶11    Defense counsel argued that Shields would not pose a significant risk of bodily harm to himself because "a plan could address where he could live and support himself and what arrangements are available in the community, such as guardianships and protective placements." Defense counsel ended her closing remarks by arguing that the State failed to meet its burden of proof and the petition should be granted.

¶12    The circuit court began its comments by observing that the statute did not specifically assign the burden of proof to either party. The court stated:

> As indicated under [WIS. STAT. §] 971.17(4)(d) [(2021-22[1]], it does provide for the burden. It doesn't specifically say in the statute who bears that burden, but it says, the Court shall grant the petition unless it finds by clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released.

¶13    The court then determined that the factors showed by clear and convincing evidence that Shields would pose a significant risk of bodily harm to himself and others if conditional release was granted. The court relied on the seriousness of the underlying offense, noting Shields killed a person by stabbing him to death. The court also relied on Shields' lack of awareness of his medical conditions, noting that Miller opined Shields would not follow through with

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

treatment for his various conditions if released. The court believed Shields' schizophrenia was currently being managed but expressed concern about Shields' mental health history, significantly during the time period where he killed the victim. The court also noted there was a lack of evidence about where Shields would live or how he would support himself, elaborating:

> There's really no indication of where he would live, how he would support himself, doesn't appear that he would generally cooperate with support personnel if he were conditionally released. There would be difficulties to the fact of ensuring his access to and compliance with medication that is absolutely necessary not only for his physical conditions but his mental health conditions. And what arrangements are possible for treatment beyond medication, again, with regards to his physical conditions, it appears there's fairly significant treatment that is ongoing and necessary for him.

¶14 The court then found "by clear and convincing evidence that he would pose a significant risk of bodily harm to both himself and to others if the conditional release petition was granted." It entered an order denying the petition for conditional release. Shields appeals.

## ANALYSIS

### I. Evidentiary determinations

¶15 On appeal, Shields first argues the circuit court erred by excluding testimony about the suitability of a guardianship or protective placement. Shields emphasizes that pursuant to WIS. STAT. § 971.17(4)(d), the court shall grant the petition for release unless the court finds "by clear and convincing evidence that the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage if conditionally released." The statute then provides a list of factors the court may consider, including:

6

> [T]he nature and circumstances of the crime, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, what arrangements are available to ensure that the person has access to and will take necessary medication, and what arrangements are possible for treatment beyond medication.

*Id.* Shields argues the evidence about the suitability of a guardianship or protective placement was relevant to these statutory factors and the circuit court erred by excluding this evidence.

¶16 The State responds that the circuit court did not erroneously exclude the evidence, but if it did, the error was harmless. *State v. Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434 ("The erroneous exclusion of testimony is subject to the harmless error rule."). An "error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *In re Commitment of Burris*, 2002 WI App 262, ¶16, 258 Wis. 2d 454, 466, 654 N.W.2d 866 (citation omitted). "When determining whether error is harmless, the reviewing court considers the entire record." *Id.* The State bears the burden of proof. *Hunt*, 360 Wis. 2d 576, ¶26.

¶17 We conclude that any error in the exclusion of testimony about the suitability of a guardianship or protective placement was harmless because it is clear beyond a reasonable doubt that the circuit court would have denied Shields' conditional release petition even if evidence of his suitability for a guardianship or protective placement was admitted. *See Burris*, 258 Wis. 2d 454, ¶16. The record overwhelmingly establishes that Shields would pose a significant risk of harm to himself or others if conditionally released.

¶18 With respect to the risk he poses to himself, the evidence showed that Shields has many serious medical issues that he neither recognizes nor can

7

treat on his own. The evidence also demonstrated that supervision in the community would not eliminate this risk of harm because Shields is not willing to cooperate with people trying to help him. Miller testified that Shields "has limited frustration tolerance" and if he were released "he would need to have numerous contacts with medical providers …. And I don't see any evidence that he would be willing to cooperate with that across time and situation and his normal response has been to just stop cooperating."

¶19 As for the risk of harm Shields poses to others, the nature of his crime—killing his neighbor by stabbing him to death—shows a high level of dangerousness. *See State v. Randall* (*Randall III*), 2011 WI App 102, ¶¶19-21, 336 Wis. 2d 399, 802 N.W.2d 194 ("Such brutal criminal acts, for which [the defendant] was found guilty, are evidence of dangerousness."). Miller explained that Shields has "paranoid type of schizophrenia where he believes … people are messing or meddling with him," and Miller did not believe Shields would continue to control his schizophrenia if released in the community. Shields previously told Miller that if he was in the community and somebody was "messing or meddling with him" that Shields believed he had the right to kill that person. Although the evidence established that Shields did not currently remember the homicide, Miller testified that patients with serious brain damage like Shields are "generally a high risk for aggression because they forget what's going on and accuse people of lying to them or trying to cause them harm." Additionally, although Miller testified that Shields' level of aggression has "reduced a bit" given his current treatment for prostate cancer; Miller testified that Shields' aggression will increase if he stopped cancer treatment in the community, which Miller believed was a likely scenario.

¶20 Further, even if the circuit court had permitted defense counsel to question Miller about whether a guardianship/protective placement should be

considered for Shields, Miller still explicitly testified that, under either scenario, Shields would still be a harm to himself. In short, the record establishes beyond a reasonable doubt that the circuit court would have denied Shields' conditional release petition even if evidence of his suitability for a guardianship or protective placement was admitted. *See Burris*, 258 Wis. 2d 454, ¶16.

## II.    Burden of proof

¶21     Shields next argues the circuit court erred by failing to properly assign the burden of proof to the State at the hearing on his petition. On appeal, the parties agree that although WIS. STAT. § 971.17(4)(d) is silent as to who bears the burden of proof, it is the State who bears the burden of proof at a conditional release hearing. *See Randall III*, 336 Wis. 2d 399, ¶15.

¶22     In support of his argument that the circuit court failed to assign the burden of proof to the State, Shields emphasizes that defense counsel ended her closing remarks by arguing the State failed to meet its burden of proof and the court immediately responded by saying the statute did not specifically state who bore the burden of proof. Shields suggests the circuit court's statement meant that it did not assign the burden of proof to the State.

¶23     The State responds that Shields' reading of the record is unreasonable. The State asserts that the fact the circuit court accurately noted that WIS. STAT. § 971.17(4)(d) did not assign the burden of proof does not mean the court neglected to hold the State to its burden. The State points out that, in context, not only did defense counsel assign the burden of proof to the State in her closing argument but the State also repeatedly assigned the burden to itself in its own closing argument. The State argued that "the State has proven by clear and convincing evidence that Mr. Shields continues to present a substantial risk of

harm not only to himself but to others" and also that the evidence presented "satisfies the State's burden and the State would ask the Court to deny the petition for conditional release." The State also emphasizes that the court recounted and detailed the State's proof as support for its finding of clear and convincing evidence of dangerousness.

¶24 We agree with the State. The record establishes that the circuit court applied the correct burden of proof—clear and convincing—and assigned that burden to the State. Both parties advised the court that the State had the burden and, when making its clear and convincing dangerousness determination, the circuit court relied on and detailed the evidence that had been presented by the State.

¶25 Moreover, Shields does not argue, and nothing in the record suggests, that the circuit court improperly assigned the burden of proof to Shields. Rather, any error was that the circuit court did not explicitly assign the burden to the State on the record. To the extent this was error, it was harmless. As detailed above, the State offered clear and convincing evidence of dangerousness. The circuit court relied on this evidence when making its determination. Nothing would have changed had the circuit court stated on the record that it assigned the burden to the State.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.